AROCLES AGUILAR (SBN: 94753)
HARVEY Y. MORRIS (SBN: 87902)
MITCHELL SHAPSON (SBN: 127860)
POUNEH GHAFFARIAN (SBN: 242779)
JONATHAN C. KOLTZ (SBN: 268793)
505 Van Ness Avenue
San Francisco, CA 94102
Telephone:     415-703-2727
Facsimile:     415-702-2262
Email:          Mitchell.Shapson@cpuc.ca.gov

*Attorneys for Defendants California Public
Utilities Commission, and Michael Picker,
Michel Florio, Catherine J.K. Sandoval,
Carla J. Peterman, Liane M. Randolph,
in their official capacities as Commissioners
of the Public Utilities Commission of the State of California*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| A WHITE AND YELLOW CAB, INC., a California Corporation, dba A TAXI CAB, dba 1-800-4 MY TAXI , | Case No.:   4:15-cv-05163-JSW |
| Plaintiff, | **CPUC DEFENDANTS' MOTION TO DISMISS; NOTICE OF MOTION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | Date:          June 3, 2016 |
| UBER TECHNOLOGIES, INC., et al, | Time:          9:00 a.m. |
| Defendants. | Courtroom:   5, 2nd Floor |
| | Judge:         Hon Jeffrey S. White |
| | Trial Date:    N/A |

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ................................................................................... ii

I.  BACKGROUND ...................................................................................................3

    A.  The California Public Utilities Commission.....................................................3

    B.  The CPUC's Jurisdiction over Transportation Providers ...............................3

    C.  The Commission's TNC Rulemaking Proceeding and Determination
        Regarding Jurisdiction Over Transportation Network Companies...................4

II.  LEGAL ARGUMENT............................................................................................7

    A.  Standard of Review.........................................................................................7

    B.  Plaintiff's Challenges to the Jurisdictional Portion of the TNC Phase 1
        Decision, Suit Against the CPUC as an Entity, and Claims for Monetary
        Damages are all Barred by the Eleventh Amendment ......................................8

        1.  Plaintiff may not sue the CPUC Defendants under state law .....................8

        2.  Plaintiff may not sue the CPUC as an entity...............................................10

        3.  Plaintiff may not sue the CPUC Defendants for monetary damages.........10

    C.  This Court Lacks Jurisdiction Over Plaintiff's Challenges to the
        Rulemaking  Portion of the Phase 1 Decision .................................................11

        1.  The Johnson Act Divests this Court of Jurisdiction...................................12

        2.  Plaintiff's Claims are Not Ripe ..................................................................14

III.  CONCLUSION.....................................................................................................16

**TABLE OF AUTHORITIES**

Pages

**FEDERAL COURT DECISIONS**

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998)...................................................................11

*Brooks v. Sulphur Springs Valley Electric Cooperative*,
951 F.2d 1050 (9th Cir. 1991) ......................................................................................14

*Cardenas v. Anzai*, 311 F.3d 929 (9th Cir. 2002) .......................................................11

*Citizens for Better Forestry v. U.S. Dept. of Agric.*,
341 F.3d 961 (9th Cir. 2003) ...............................................................................2, 15, 16

*Colony Cove Properties, LLC v. City of Carson*,
640 F.3d 948 (9th Cir. 2011) ...........................................................................................7

*County of Del Norte v. United States*, 732 F.2d 1462 (9th Cir. 1984)......................14

*Edelman v. Jordan*, 415 U.S. 651 (1974) ...................................................................11

*Ex Parte Young*, 209 U.S. 123 (1908) .....................................................................8, 10

*Jachetta v. United States*, 653 F.3d 898 (9th Cir. 2011)............................................10

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000) ...................................................8

*Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*,
440 U.S. 391 (1979)........................................................................................................11

*Nat'l Park Hospitality Ass'n v. Dept. of the Interior*,
538 U.S. 803 (2003)........................................................................................................15

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998)................................15

*Or. Natural Desert Ass'n v. U.S. Forest Serv.*,
462 F.3d 977 (9th Cir. 2006) .........................................................................................15

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984)..............2, 8, 10

*Peoples Nat'l Util. Co. v. City of Houston*,
837 F.2d 1366 (5th Cir. 1988) .......................................................................................13

*Public Utilities Com'n of State of Cal.* v. *United States*,
356 F.2d 236 (9th Cir. 1966) .........................................................................................11

*Puget Sound Energy, Inc. v. U.S.*, 310 F.3d 613 (9th Cir. 2002)................................15

*Sable Commc'ns of Cal. v. Pac. Tel. & Tel. Co.*,
890 F.2d 184 (9th Cir. 1989) .........................................................................................10

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) ..................................7

*Tennyson v. Gas Service Company*, 506 F.2d 1135 (10th Cir. 1974)........................12

*United Parcel Serv. v. Pub. Util. Comm'n*,
77 F.3d 1178, (9th Cir. 1996) ...............................................................6

*US West, Inc. v. Nelson*, 146 F.3d 718 (9th Cir. 1998)...........................2, 12, 13, 14

*Warren v. Fox Family Worldwide*, 328 F.3d 1136 (9th Cir. 2003) ...........................7

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000).............................................8


**UNITED STATES CONSTITUTION**

Fifth Amendment ..............................................................................9, 13

Eleventh Amendment..........................................................................2, 8, 10, 11

Fourteenth Amendment .......................................................................9, 13


**FEDERAL STATUTES**

Johnson Act, 28 U.S.C. § 1342............................................................2, 11, 12


**FEDERAL REGULATIONS**

Federal Rules of Civil Procedure
    Rule 12(b)(1)...........................................................................1, 2
    Rule 12(b)(6)...............................................................................1


**CALIFORNIA COURT DECISIONS**

*San Pablo Bay Pipeline Co., LLC v. Pub. Util. Comm'n*,
243 Cal. App. 4th 295, (Cal. Ct. App. 2015) ...........................................5

*So. Cal. Edison Co. v. Peevey*, 31 Cal. 4th 781 (2003)............................................3


**CALIFORNIA CONSTITUTION**

    Art. XII
        § 4.......................................................................................3


**CALIFORNIA STATUTES**

    California Public Utilities Code

§ 311(d)..................................................................................................6, 15

§ 451.............................................................................................................3

§ 701.............................................................................................................3

§§ 1701-1736.............................................................................................14

§§ 1756-1767.............................................................................................14

§§ 5351-5444...............................................................................................3

§ 5353(g).............................................................................................4, 8, 9

§ 5360...........................................................................................................3

§ 5360.5............................................................................................4, 9, 10

§ 5360.5(a)....................................................................................................4

§ 5360.5(b)....................................................................................................9

§ 5371...........................................................................................................3

§ 5381...........................................................................................................3

§§ 5430-5444...........................................................................................6, 9

California Government Code

§ 53075.5.................................................................................................4, 9

## CALIFORNIA PUBLIC UTILTIES COMMISSION DECISION

Decision 13-09-045.....................................................................................5

## CALIFORNIA CODE OF REGULATIONS

Title 20

§§ 1.71, 6.1..................................................................................................5

§§ 1.71, 6.1, 13.1-13.14.............................................................................14

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**NOTICE IS HEREBY GIVEN** that on June 3, 2016, at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located in Courtroom 5, 2nd Floor, Federal Courthouse, at 1301 Clay Street, Oakland, California, before the Honorable Jeffrey S. White, Defendants California Public Utilities Commission ("CPUC"), and Defendants Michael Picker, Michel Florio, Catherine Sandoval, Carla Peterman, and Liane Randolph, in their official capacities as Commissioners of the California Public Utilities Commission (collectively, "the CPUC Defendants"), will move this Court under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the Complaint ("Compl.") of Plaintiff, A White and Yellow Cab, Inc. ("Plaintiff").

The CPUC Defendants seek dismissal of the Complaint without leave to amend, and dismissal of the action.  The Motion is based on this Notice, the Memorandum of Points and Authorities, the Exhibits ("Exh.") to the Uber Defendants' Request for Judicial Notice ("RJN")[1], the oral argument of counsel, and such other documents or information as may come before the Court upon hearing of this matter.

///

///

///

---

[1] Rather than file duplicate papers, the CPUC Defendants respectfully join in the Uber Defendants' Request for Judicial Notice, Docket No. 18, filed March 4, 2016.

# SUMMARY OF ARGUMENT[2]

Plaintiff A White and Yellow Cab, Inc., ("Plaintiff") sues both the California Public Utilities Commission ("CPUC") and the five named CPUC Commissioners in their official capacity (collectively, "the CPUC Defendants"). Plaintiff challenges a CPUC Decision ("the Phase 1 Decision") in which the CPUC basically took two actions. First, the CPUC asserted jurisdiction over Transportation Network Companies ("TNCs"). Second, having asserted jurisdiction, the CPUC promulgated a number of rules to govern the TNCs' behavior. The CPUC Defendants will refer hereafter to the "jurisdictional portion" and the "rulemaking portion" of the Phase 1 Decision.

Plaintiff challenges the jurisdictional portion, purportedly on due process grounds. But Plaintiff's challenges amount to nothing more than assertions that the CPUC Defendants failed to conform their conduct to California law. As such, this Court is barred from hearing those claims under the Eleventh Amendment to the U.S. Constitution. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Plaintiff challenges the rulemaking portion under both due process and equal protection grounds. But this Court lacks jurisdiction over those claims as well, both under the Johnson Act, 28 U.S.C. § 1342, *see US West, Inc. v. Nelson*, 146 F.3d 718, 722 (9th Cir. 1998), and because Plaintiff's challenge to the rulemaking portion is not ripe for judicial review, *see Citizens for Better Forestry v. U.S. Dept. of Agric.*, 341 F.3d 961, 977 (9th Cir. 2003).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, this Complaint should be dismissed without leave to amend.

---

[2] Per Rule 7 of Judge White's Civil Standing Order, this Summary does not count towards the fifteen-page limit for motions.

## MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF CPUC DEFENDANTS' MOTION TO DISMISS

## I.     BACKGROUND

### A.     The California Public Utilities Commission

The CPUC is "a state agency of constitutional origin with far-reaching duties, functions and powers whose power to fix rates and establish rules has been liberally construed." *So. Cal. Edison Co. v. Peevey*, 31 Cal. 4th 781, 792 (2003) (internal punctuation and quotations omitted).  The CPUC has plenary authority over public utility practices and facilities pursuant to the California Constitution and the Public Utilities Code.  Cal. Const., Art. XII; Cal. Pub. Util. Code §§ 451, 701.  The CPUC "may fix rates and establish rules for the transportation of passengers . . . by transportation companies."  Cal. Const., Art. XII, § 4.

### B.     The CPUC's Jurisdiction over Transportation Providers

In 1961, the California Legislature added the Charter-Party Carriers of Passengers Act ("Charter-Party Act") to the California Public Utilities Code.  Cal. Pub. Util. Code §§ 5351-5444.  The Charter-Party Act gave the CPUC jurisdiction over charter-party carriers, Cal. Pub. Util. Code § 5381; required that all charter-party carriers obtain operating authority from the CPUC, Cal. Pub. Util. Code § 5371; and authorized the Commission to set additional rules and regulations to ensure that charter-party carriers operate safely, Cal. Pub. Util. Code § 5381.

A charter-party carrier is any "person engaged in the transportation of persons by motor vehicle for compensation, whether in common or contract carriage, over any public highway in this state."  Cal. Pub. Util. Code § 5360.  The CPUC recognizes two types of charter-party carriers: Passenger Stage Corporations ("PSC") and Transportation Charter Parties ("TCP").  *See* RJN, Exh. B, p. 2 [Doc. 18-4, p. 80].  The Charter-Party Act exempts taxicabs from the

CPUC's jurisdiction, Cal. Pub. Util. Code § 5353(g); taxicabs are instead generally regulated by local municipalities, *see* Cal. Gov. Code § 53075.5.

Under the California Public Utilities Code, the distinction between taxicabs and charter-party carriers hinges on the concept of "prearrangement": a ride is "prearranged" when "the transportation of the prospective passenger was arranged with the carrier by the passenger, or a representative of the passenger, either by written contract or telephone." Cal. Pub. Util. Code § 5360.5. Charter-party carriers may only operate on a prearranged basis, Cal. Pub. Util. Code § 5360.5(a), and must carry a paper or electronic waybill demonstrating prearrangement, Cal. Pub. Util. Code § 5381.5. Taxicabs, on the other hand, may accept "street hails" where no arrangement for transportation is made until the passenger actually steps into the vehicle. *See* RJN, Exh. A, p. 20 [Doc. 18-4, p. 22].

## C. The Commission's TNC Rulemaking Proceeding and Determination Regarding Jurisdiction Over Transportation Network Companies

In 2012, a new form of transportation service emerged in California, primarily associated with companies such as Uber, Lyft, and Sidecar. *See* RJN, Exh. G, p. 4 [Doc. 18-5, p. 19]. These companies all developed smartphone applications that allowed non-professional drivers, driving their own personal vehicle, to transport passengers in exchange for a fee. RJN, Exh. G, p. 1 [Doc. 18-5, p. 16]. The CPUC would eventually name these companies Transportation Network Companies. RJN, Exh. A, p. 2 [Doc. 18-4, p. 4]. Controversy quickly arose as to whether these new services should be regulated; by whom; and as what (i.e., as taxicabs or as charter-party carriers).

In December 2012, the CPUC opened an administrative rulemaking proceeding ("the TNC Rulemaking") to address this new form of transportation service. RJN, Exh. G. On

December 20, 2012, the CPUC served notice of the proceeding on a wide array of potentially-interested persons and entities.  *See* RJN, Exh. G, Attachment A [Doc. 18-5, pp. 31-33].  The notice set forth the subject and scope of the TNC Rulemaking, RJN, Exh. G, p. 10 [Doc. 18-5, p. 25], and explained how to participate in the TNC Rulemaking, including how to become a party, and how to receive information, notices, and documents associated with the TNC Rulemaking.  RJN, Exh. G, pp. 11-13 [Doc. 18-5, pp. 26-28].  As is its regular practice, the CPUC also published notice of the proceeding on its Daily Calendar, which is available on the CPUC's website.  *See* Cal. Code Regs., tit. 20, §§ 1.71, 6.1.

A wide range of parties participated in the TNC Rulemaking, including members of the public; taxicab and limousine companies, drivers, and trade groups; the TNCs themselves; cities and counties; taxicab commissions; airports; insurance industry representatives; the California Highway Patrol; and environmental, disability rights, and consumer advocacy groups.  RJN, Exh. A, pp. 5-7 [Doc. 18-4, pp. 7-9] (summarizing participation from various parties).  These groups submitted multiple rounds of written opening and reply comments on various legal, factual, and policy issues; they attended a pre-hearing conference, a two-day workshop, and a public participation hearing; and they filed a welter of legal pleadings.  *See id*.

In September 2013, the CPUC closed the first phase of the proceeding by issuing Decision 13-09-045 ("the Phase 1 Decision").[3]  RJN, Exh. A.  The Phase 1 Decision considered whether TNCs should be treated as taxicabs, and instead found that TNCs were charter-party carriers pursuant to California Public Utilities Code § 5351 *et seq.* and should be regulated by the CPUC under those provisions.  RJN, Exh. A, p. 23 [Doc. 18-4, p. 25].  The

---

[3] The CPUC often bifurcates its proceedings or splits them into phases.  *See*, *e.g.*, *San Pablo Bay Pipeline Co., LLC v. Pub. Util. Comm'n*, 243 Cal. App. 4th 295, 314 (Cal. Ct. App. 2015).

Phase 1 Decision also implemented various additional rules that TNCs must abide by, above and beyond what is required in the Public Utilities Code for charter-party carriers, such as the implementation of driver background checks. RJN, Exh. A, pp. 26-35 [Doc. 18-4, pp. 28-37]. The CPUC stated that the TNC Rulemaking was not closed, but would carry on into a Phase 2. RJN, Exh. A, p. 3 [Doc. 18-4, p.5].

The Phase 1 Decision has already survived legal challenge. In May 2014, the Taxicab Paratransit Association of California, a statewide trade organization, petitioned for review of the Phase 1 Decision in both the California Supreme Court and Court of Appeal, making many of the same arguments that Plaintiff raises here. RJN, Exhs. K-L. After some procedural wrangling, the California Supreme Court summarily denied both petitions.[4] *See* RJN, Exh. M.

Following the Phase 1 Decision, the California Legislature blessed the Phase 1 Decision by recognizing TNCs; adopting the CPUC's definition of a TNC; recognizing the CPUC's jurisdiction over TNCs; and adding additional TNC insurance requirements. *See* Cal. Pub. Util. Code §§ 5430-5444. In response to that legislation, the Commission adopted Decision 14-11-043 ("the Insurance Decision") expanding and clarifying insurance requirements for TNCs. RJN, Exh. V.

On January 25, 2016, the Assigned Commissioner issued her Proposed Decision on Phase 2 of the TNC Proceeding ("Proposed Phase 2 Decision"). RJN, Exh. N. As of the date of this filing, the CPUC, acting through the five Commissioners, has not formally approved the Proposed Phase 2 Decision, which is therefore not final. *See* Cal. Pub. Util. Code § 311(d) (the

---

[4] Under California law, such summary denials are decisions on the merits, and are res judicata. *See United Parcel Serv. v. Pub. Util. Comm'n*, 77 F.3d 1178, 1187 (9th Cir. 1996). They do not, however, have a stare decisis effect. *See id.*

Commissioners may "adopt, modify, or set aside the proposed decision or any part of the decision.").

If the Proposed Phase 2 Decision is approved without substantive change, that Decision would, among other things, set rules for TNC vehicle inspections and the maintenance of inspection records; set rules for driver background checks for certain types of TNCs; and set rules for the TNCs' trade dress. RJN, Exh. N, pp. 5-7 [Doc. 18-7, pp. 124-126] (summarizing contents of Proposed Decision). Particularly relevant here, the Proposed Decision would require TNCs to certify the nature of their operations and how fares are calculated, and would set rules on fare-splitting operations. RJN, Exh. N, pp. 6-7 [Doc. 18-7, pp. 125-126]. The Proposed Phase 2 Decision would keep the TNC Rulemaking open to consider "any additional issues deemed relevant to the regulation of TNCs." RJN, Exh. N., p. 7 [Doc. 18-7, p. 126].

## II.   LEGAL ARGUMENT

### A.   Standard of Review

"When ruling on a motion to dismiss, [the Court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (internal quotations omitted). The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998), and courts "do not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide*, 328 F.3d 1136, 1139 (9th Cir. 2003). Moreover, where a motion to dismiss is based on extrinsic evidence, there is no presumption that the allegations in the Complaint are true, and a court may look at matters of public record

without converting the motion into one for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

**B.     Plaintiff's Challenges to the Jurisdictional Portion of the TNC Phase 1 Decision, Suit Against the CPUC as an Entity, and Claims for Monetary Damages are all Barred by the Eleventh Amendment**

**1.     Plaintiff may not sue the CPUC Defendants under state law**

"[I]n the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 100; *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) ("[T]he Constitution does not provide for *federal jurisdiction* over suits against nonconsenting States.") (emphasis added).  Through the *Ex Parte Young* doctrine, in limited circumstances private litigants may sue state officials in their official capacities, and Plaintiff has sued the five named Commissioners here. *Ex Parte Young*, 209 U.S. 123, 156-157 (1908).  But *Ex Parte Young* does not apply to suits brought against state officials under state laws, as the Supreme Court noted in *Pennhurst*:

> [I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.  We conclude that *Young* . . . [is] inapplicable in a suit against state officials on the basis of state law.

*Pennhurst*, 465 U.S. at 106.  Plaintiff's challenges to the jurisdictional portion of the Phase 1 Decision invite this Court to instruct the CPUC Defendants on how to conform their conduct to California law, in clear violation of *Pennhurst* and the Eleventh Amendment.

Plaintiff first asserts that the CPUC Defendants exercised jurisdiction over the TNCs "in contradiction to its own authority" under California Public Utilities Code Section 5353(g), Compl. pp. 31-32, ¶ 87, which precludes CPUC jurisdiction over "[t]axicab transportation

service licensed and regulated by a city or county . . . ." Cal. Pub. Util. Code § 5353(g). Even if Plaintiff were right, that is a question of California law, not federal law, and therefore not for this Court to answer. Likewise, Plaintiff asserts that the jurisdictional portion of the Phase 1 Decision "was in direct contradiction to" California Government Code Section 53075.5, which requires cities and counties to regulate taxicabs. Compl. p. 32, ¶ 88; Cal. Gov. Code § 53075.5. Again, even were that true, it is for the California courts to decide.[5]

Plaintiff finally asserts that the jurisdictional portion of the Phase 1 Decision is unconstitutionally vague under the due process clauses of the Fifth and Fourteenth Amendments because, Plaintiff asserts, the CPUC Defendants put forth an unclear definition of the term "prearrangement." Compl. p. 33, ¶ 94. This argument, at least, is cast as a federal issue, but here is the problem with it: In promulgating the jurisdictional portion of the Phase 1 Decision, the CPUC Defendants did not create a new definition of "prearrangement," but found that the TNCs' services met the existing definition of "prearrangement" set forth in California Public Utilities Code Section 5360.5. *See* RJN, Exh. A, pp. 20-21 [Doc. 18-4, pp. 22-23]; Cal. Pub. Util. Code § 5360.5(b) (" '[P]rearranged basis' means that the transportation of the prospective passenger was arranged . . . either by written contract or telephone."). That definition was codified in 1999, long before the present dispute arose, and Plaintiff does not challenge its validity. Thus, Plaintiff's argument here can only be understood as asserting that, in exercising jurisdiction over the TNCs, the CPUC Defendants misinterpreted the existing

[5] Here, Plaintiff also attacks Sections 5430-5443 of the California Public Utilities Code as "seek[ing] to codify and legitimatize part of a void or voidable act by the Commissioners . . . in excess of their authority." Compl. p. 32, ¶ 88. The CPUC Defendants admit to not understanding this argument: Surely the California Legislature has the authority to decide what California's laws ought to be. But again, even if Plaintiff were right, its challenge to those provisions of the Public Utilities Code hinge on its attacks against the jurisdictional portion of the Decision *under state law*.

statutory definition of "prearrangement" as set forth in Section 5360.5. That is, yet again, a pure question of state law, which Plaintiff may not bring against the CPUC Defendants in this Court without violating the Eleventh Amendment.

This Court lacks jurisdiction to consider Plaintiff's challenges to the jurisdictional portion of the Phase 1 Decision. Plaintiff cannot cure this jurisdictional defect through amendment; therefore, this part of the Complaint should be dismissed without leave to amend. Two Eleventh Amendment issues remain.

### 2. Plaintiff may not sue the CPUC as an entity

As well as bringing this suit against the five named Commissioners, which is permissible under *Ex Parte Young*, Plaintiff has sued the CPUC as an entity, which is not. The CPUC is an arm of the State of California, established by Article XII of the California Constitution, and is protected by the Eleventh Amendment. *Sable Commc'ns of Cal. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 191 (9th Cir. 1989). Plaintiff has not asserted that the CPUC has consented to the jurisdiction of this Court, and could not plausibly do so. *See Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011) (holding that a state waives its immunity "only where stated by the most express language . . . .") Because the CPUC is an arm of the State of California, and has not consented to federal jurisdiction, this Court lacks jurisdiction over it, and all of the claims against it must therefore be dismissed. *Pennhurst*, 465 U.S. at 100.

### 3. Plaintiff may not sue the CPUC Defendants for monetary damages

Plaintiff finally prays for "past and future damages against the Commissioners and the CPUC . . . ." Compl., Prayer ¶ 14. It is well settled that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the

Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This is so even when a state official, rather than the state itself, is the named defendant. *Id*.; *see Cardenas v. Anzai*, 311 F.3d 929, 935 (9th Cir. 2002).

Moreover, legislative immunity acts as an absolute bar to claims for damages against state officials, such as the five named Commissioners here, for their legislative conduct. "Legislative conduct" means not just traditional legislation, but also to decisions encompassing discretion and policymaking, *Bogan v. Scott-Harris*, 523 U.S. 44, 55-56 (1998), that is, essentially any conduct "in the sphere of legitimate legislative activity." *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 403-06 (1979). "Public utility regulation, historically, has been a function of the legislature. . . " thus, when a state commission regulates utilities "as the authorized representative of the legislature, [that] is recognized to be essentially a legislative act." *Pub. Util. Comm'n v. United States*, 356 F.2d 236, 241 (9th Cir. 1966). The CPUC's regulation of TNCs is plainly a legislative act.

Both because Plaintiff's prayer for damages against the CPUC Defendants is barred by the Eleventh Amendment, and because the CPUC Defendants are absolutely immune, this Court should dismiss Plaintiff's prayer for damages against the CPUC Defendants.

## C. This Court Lacks Jurisdiction Over Plaintiff's Challenges to the Rulemaking Portion of the Phase 1 Decision

Plaintiff goes on to bring various constitutional claims against the rulemaking portion of the Phase 1 Decision. They are all barred. First, they all fall afoul of the Johnson Act, 28 U.S.C. § 1342. Second, none of them are ripe for adjudication. All of these claims should be dismissed.

## 1.    The Johnson Act Divests this Court of Jurisdiction

The Johnson Act, 28 U.S.C. § 1342, bars federal courts from exercising jurisdiction over constitutional challenges to state commission orders affecting rates. *See Tennyson v. Gas Service Co.*, 506 F.2d 1135, 1138 (10th Cir. 1974) (holding that the Johnson Act removes federal jurisdiction over constitutional challenges to state orders affecting rates "lock, stock and barrel").  Under the Johnson Act:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a ratemaking body of a State political subdivision, where:
>
> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
>
> (2) The order does not interfere with interstate commerce; and,
>
> (3) The order has been made after reasonable notice and hearing, and
>
> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342.  By its use of the broad phrase "order affecting rates," the Johnson Act applies not only to direct ratesetting orders, but to states' ratemaking systems as a whole, "including any particular procedure that the system employs . . . ."  *US West,* 146 F.3d at 722.

The Phase 1 Decision lays out requirements for the TNCs including, but not limited to, insurance limits, background checks, and the recovery of costs from passengers.  RJN, Exh. A, pp. 26-35, 40 [Doc. 18-4, pp. 28-37, 42].  These rules necessarily affect the TNCs' fares – indeed, during the TNC Rulemaking, several taxicab companies and industry groups argued that if the regulations for TNCs were more lenient than those for taxicabs, taxicabs would be at a price disadvantage.  RJN, Exh. A, pp. 60-61 [Doc. 18-4, pp. 63-64].  Plaintiff makes essentially the same arguments here, repeatedly asserting that the CPUC's rules allow the TNCs to implement "surge pricing," "safe ride fees," and other practices, all of which are

allegedly to Plaintiff's detriment, and all of which concern the TNCs' rates. *See*, *e.g.*, Compl. p. 14, ¶ 39. And the Proposed Phase 2 Decision discusses in detail the TNCs' new fare-splitting services, and the fares chargeable by them; and requires the TNCs to certify how they calculate those fares. RJN, Exh. N, pp. 42-50 [Doc. 18-7, pp. 161-169]. In sum, Plaintiff challenges the CPUC's entire system of regulation over the TNCs, which necessarily affects the TNCs' rates. The Phase 1 Decision is, therefore, an order affecting rates within the meaning of the Johnson Act.

Turning now to the four prongs of the Johnson Act: The Complaint is based in large part on the Fifth and Fourteenth Amendments, and it is those substantive claims that purport to give this Court jurisdiction over the CPUC Defendants. Compl. 31-43, ¶¶ 84-106; Prayer for Relief, ¶¶ 13. The first prong of the Johnson Act is clearly met. *See Peoples Nat'l Utility Co. v. Houston*, 837 F.2d 1366, 1368 (5th Cir. 1988) (holding that Johnson Act barred due process and takings claims, and that "Plaintiffs may not use § 1983 as an 'end run' around the Johnson Act.").

The second prong is clear as well: Plaintiff does not allege that the Phase 1 Decision interferes with interstate commerce. There is nothing in the record that would demonstrate such interference. The CPUC's constitutional and statutory authority only extends to California public utilities and their *intrastate* rates and services. *See* Cal. Pub. Util. Code § 701 ("The [CPUC] may supervise and regulate every public utility *in the State* . . . ." (emphasis added). And, for purposes of the Johnson Act, state agency orders affecting intrastate utility rates do not interfere with interstate commerce, even if they may have an incidental interstate effect. *US West*, 146 F.3d at 724. For these reasons the second prong of the Johnson Act is clearly met.

As to the third prong: Plaintiff does not allege that it lacked notice or an opportunity to be heard. The CPUC has a statutory obligation to provide such notice and hearing, Cal. Pub. Util. Code §§ 1701-1736; its own rules of practice and procedure require the same thing, Cal. Code Regs., tit. 20, §§ 1.71, 6.1, 13.1-13.14; and, in the absence of clear evidence to the contrary, the CPUC is entitled to a presumption that it regularly discharged its official duties. *See County of Del Norte v. United States*, 732 F.2d 1462, 1468 (9th Cir. 1984). And the record of the TNC Rulemaking plainly shows that a vast array of interested parties could and did participate in the proceeding. RJN, Exh. A, pp. 5-7 [Doc. 18-4, pp. 7-9] (summarizing participation from various parties). The third prong of the Johnson Act has been met.

Finally, Plaintiff can pursue a plain, speedy and efficient remedy in the California judicial system. *See* Cal. Pub. Util. Code §§ 1756-1767. In *Brooks v. Sulphur Springs Valley Electric Cooperative*, 951 F.2d 1050, 1055-56 (9th Cir. 1991), the Ninth Circuit found that a statutory scheme similar to the judicial review provisions of the Public Utilities Code met the fourth prong of the Johnson Act. The California courts are fully capable of reviewing constitutional challenges to CPUC orders, and it is to them that Plaintiff should have turned.

Since all four prongs of the Act are easily met, the Johnson Act bars Plaintiff's challenge to the rulemaking portion of the Phase 1 Decision. *See US West,* 146 F.3d at 726.

## 2. Plaintiff's Claims are Not Ripe

Plaintiff challenges the rulemaking portion of the Phase 1 Decision. That Decision does not exist in a vacuum; it comes instead as part of the ongoing TNC Rulemaking proceeding. All of the substantive rules about which Plaintiff complains remain in play before the CPUC; none of the issues have been finally decided. Because the CPUC's regulations are

not yet "at an administrative resting place," *Citizens for Better Forestry*, 341 F.3d at 977,

Plaintiff's challenges to the rulemaking portion of the Phase 1 Decision are not ripe.

Ripeness is a justiciability doctrine "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction . . . ." *Nat'l Park Hospitality Ass'n v. Dept. of the Interior*, 538 U.S. 803, 808 (2003) (internal quotation omitted). In determining whether a challenge to agency action is ripe, one of the factors to consider is "whether judicial intervention would inappropriately interfere with further administrative actions . . . ." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). Judicial review is premature when an agency's decision is not yet "at an administrative resting place." *Citizens for Better Forestry*, 341 F.3d at 977. Put another way, a claim is ripe for review when it is not "merely tentative or interlocutory," but rather the agency "has rendered its last word on the matter." *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 462 F.3d 977, 984 (9th Cir. 2006).

Plaintiff concedes, as it must, that the CPUC's rulemaking is ongoing: Plaintiff states, for example, that "[t]he CPUC has treated and continues to treat its TNC Regulation as a sort of 'work in progress.' " Compl. p. 35, ¶ 94. The CPUC Defendants agree. On January 25, 2016, the CPUC promulgated its Proposed Phase 2 Decision, which may address at least some of Plaintiff's concerns. Until the Commission votes on the Proposed Phase 2 Decision, it is not final, but instead may be adopted, modified, or set aside, in whole or in part. See Cal. Pub. Util. Code § 311(d). "[I]f an initial agency action may be modified or reversed during administrative reconsideration or review, it is rendered non-final while such review is pending." *Puget Sound Energy, Inc. v. U.S.*, 310 F.3d 613, 625 (9th Cir. 2002).

Even if it does become final, as drafted, the Proposed Phase 2 Decision would leave the TNC Rulemaking open to consider "any additional issues deemed relevant to the regulation of TNCs." RJN, Exh. N., p. 7 [Doc. 18-7, p. 126]. It is difficult to imagine a more open-ended reservation of rulemaking authority. Plaintiff asserts that this renders vague those rules already adopted. Compl. pp. 35-36, ¶ 94. But this rulemaking concerns an industry, TNCs, which did not exist five years ago, and which changes every day. The CPUC should be allowed to continue monitoring the TNC market in California as it evolves. The CPUC must not be locked in to rules that fail to keep pace with that evolving market.

Because the rules set forth in the rulemaking portion of the Phase 1 Decision are not yet "at an administrative resting place," *Citizens for Better Forestry*, 341 F.3d at 977, Plaintiff's challenges to the rulemaking portion are unripe, and should be dismissed without leave to amend.

## III. CONCLUSION

For all of the reasons stated above, the CPUC Defendants respectfully ask this Court to dismiss Plaintiff's claims without leave to amend.

Dated: March 7, 2016                       Respectfully submitted,

AROCLES AGUILAR
HARVEY Y. MORRIS
MITCHELL SHAPSON
POUNEH GHAFFARIAN
JONATHAN C. KOLTZ

By:    /s/ MITCHELL SHAPSON
_____
Mitchell Shapson

1

## <u>CERTIFICATE OF SERVICE</u>

2     I hereby certify that I electronically filed the foregoing **CPUC DEFENDANTS'**

3 **MOTION TO DISMISS; NOTICE OF MOTION; MEMORANDUM OF POINTS AND**

4 **AUTHORITIES; CPUC DEFENDANTS' JOINDER IN THE REQUEST FOR JUDICIAL**

5 **NOTICE IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE OF**

6 **UBER TECHNOLOGIES, INC., ET AL,; [PROPOSED] ORDER GRANTING**

7 **DEFENDANTS' MOTION TO DISMISS COMPLAINT** with the Clerk of the Court for the

8 United States District Court for the Northern District of California by using the Appellate

9 CM/ECF system on March 7, 2016.

10     I certify that all participants in the case are registered with CM/ECF users and that

11 service will be accomplished by the Appellate CM/ECF system.

12

13     _/s/_    ROSCELLA GONZALEZ
              ROSCELLA GONZALEZ

14

15

16

17

18

19

20

21

22

23

24