**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A WHITE AND YELLOW CAB, INC., <br><br> Plaintiff, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., et al., <br><br> Defendants. | Case No. 15-cv-05163-JSW <br><br> **ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS AND DENYING, AS MOOT, MOTION TO STRIKE** <br><br> Re: Dkt. No. 18 |

Now before the Court for consideration is the motion to dismiss and to strike, filed by Uber Technologies, Inc. ("Uber"), Rasier, LLC, and Rasier-CA, LLC (collectively "the Uber Defendants"). The Court has considered the parties' papers, including their supplemental briefs, relevant legal authority, and the record in this case.[1] For the reasons set forth below, the Court HEREBY GRANTS the Uber Defendants' motion to dismiss and DENIES AS MOOT their motion to strike.

**BACKGROUND**

This case is one of several cases filed in this District that challenges the assertion of jurisdiction by the California Public Utilities Commission ("CPUC") over "transportation network companies (TNCs)" or the manner in which the Uber Defendants conduct business. *See, e.g.,*

---

[1] Uber filed three requests for judicial notice. (*See* Dkt. Nos. 18-3, 34-2, 44.) Plaintiff has objected in part to those requests. (*See* Dkt. No. 23-2.) Plaintiff, in turn, filed two requests for judicial notice. (*See* Dkt. Nos. 25, 30-32, 40.) The Uber Defendants object, in part, to those requests. (*See* Dkt. No. 45.) The Court shall address individual documents as required in its analysis. If a document submitted with a request for judicial notice is not mentioned in this Order, the Court has not relied on it to resolve these motions.

*DeSoto Cab Company, Inc. v. Picker,* 196 F. Supp. 3d 1107 (N.D. Cal. 2016); *Rosen v. Uber Technologies, Inc.*, 164 F. Supp. 3d 1165 (N.D. Cal. 2016) ("*Rosen II*"); *L.A. Taxi Cooperative, Inc. v. Uber Technologies, Inc.*, 114 F. Supp. 3d 852 (N.D. Cal. 2015). Before the Court addresses the facts alleged in Plaintiff's Complaint in more detail, it provides a brief summary of the statutory framework and regulatory proceedings that give rise to Plaintiff's action.

**A.    Statutory and Regulatory Background.**

Taxis are exempt from the CPUC's jurisdiction and generally are regulated by municipalities. *See, e.g.,* Cal. Gov. Code § 53075.5; Cal. Pub. Util. Code § 5353(g). In contrast, the CPUC regulates "charter-party carriers" pursuant to the Charter-Party Carriers of Passengers Act. *See* Cal. Pub. Util. Code §§ 5351-5444. A charter-party carrier "means every person engaged in the transportation of persons by motor vehicle for compensation, whether in common or contract carriage, over any public highway in" California. *Id.* § 5360. Charter-party carriers must "operate on a prearranged basis," which means "the transportation of the prospective passenger [is] arranged with the carrier by the passenger, or a representative of the passenger, either by written contract or telephone." *Id.* § 5360.5; *see also id.* § 5381.5(a). "The distinction between charter-party carriers and traditional taxi companies seems to turn on this concept of 'prearranged,'" because "[t]raditional taxicabs can provide an on-demand service – *i.e.*, they can be hailed in the street," whereas charter-party carriers cannot be hailed on the street. *DeSoto*, 196 F. Supp. 3d at 1110.[2]

Prior to 2012, the CPUC recognized and regulated two forms of "transportation for compensation," charter-party carrier services and passenger stage companies. (*See, e.g.,* Dkt. No. 18, Uber Request for Judicial Notice ("Uber RJN"), Ex. A, Decision 13-09-045, Decision Adopting Rules and Regulations to Protect Public Safety While Allowing New Entrants to the Transportation Industry ("Phase I decision") at 11.)[3] On December 27, 2012, the CPUC instituted

---

[2]    *See also DeSoto*, 196 F. Supp. 3d at 1109-11 (setting forth statutory framework and CPUC decisions regarding TNCs).

[3]    The Court takes judicial notice of the existence of the Phase I decision, the rulings set forth therein, and the fact that statements were made by the CPUC. The Court does not take judicial notice of any disputed facts contained in the Phase I decision. *See, e.g., Lee v. City of Los*

1   a rulemaking proceeding to address TNCs and sought comment on issues such as public safety and
2   insurance, as well as "how the Commission's existing jurisdiction … should be applied to
3   businesses like Uber, Sidecar, and Lyft." (Uber RJN, Ex. G, Order Instituting Rulemaking
4   ("OIR") at 5-6, 10.)[4]

5   On September 19, 2013, the CPUC issued a decision classifying companies like the Uber
6   Defendants as TNCs.[5] (Phase I decision at 2, 71.) It defined a TNC as "an organization …
7   operating in California that provides prearranged transportation services for compensation using
8   an online-enabled application (app) or platform to connect passengers with drivers using their
9   personal vehicles." (*Id.* at 2.)[6] The CPUC assumed jurisdiction over TNCs, promulgated a
10  number of rules and regulations to govern TNCs, and stated that the TNC rulemaking proceedings
11  would carry over into a second phase (the "Phase II proceedings). (*See, e.g., id.* at 3, 71-75.) On
12  January 25, 2016, the CPUC issued a Proposed Decision on Phase II. (Uber RJN, Ex. N.)[7] In
13  April 2016, the CPUC issued its Phase II decision and promulgated additional rules to govern
14  TNCs, including a requirement that "every TNC shall certify...the nature of their operations, and

---

*Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); Fed. R. Evid. 201.

[4] The Court takes judicial notice of the existence of the OIR and the fact that statements were made by the CPUC. The Court does not take judicial notice of any disputed facts contained in the OIR. *See, e.g., Lee*, 250 F.3d at 689-90; Fed. R. Evid. 201.

[5] The question of whether Uber Technologies, Inc. qualifies as a TNC remains under consideration. (Uber RJN, Ex. F, Assigned Commissioner and Administrative Law Judge's Ruling Amending the Scoping Memo and Ruling for Phase II of Proceeding at 6; Dkt. No. 34-2, Uber Defendants' Supplemental Request for Judicial Notice ("Uber Supp. RJN"), Ex. W, Decision on Phase II Issues and Reserving Additional Issues for Resolution in Phase III ("Phase II decision") at 5, 9.) The CPUC has issued Rasier-CA, LLC a TNC permit. (Uber RJN, Ex. I.)

[6] The California legislature subsequently codified a nearly identical version of that definition. *See* Cal. Pub. Util. Code § 5341(c) ("'Transportation network company' means an organization, including, but not limited to, a corporation, limited liability company, partnership, sole proprietor, or any other entity, operating in California that provides prearranged transportation services for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle.").

[7] The Court takes judicial notice of the existence of this document, the rulings set forth therein, and the fact that statements were made by the CPUC. The Court does not take judicial notice of any disputed facts contained in the document. *See Lee*, 250 F.3d at 689-90; Fed. R. Evid. 201.

3

1  shall also certify how the fares are calculated." (Phase II decision at 4.)[8]  The Phase II decision

2  also permitted TNCs to split fares "subject to certain conditions." (*Id.* at 4, 9 n.3, 45.)  Finally, the

3  CPUC stated additional issues would be considered in a Phase III proceeding. (*Id.* at 5.)

### B.  Factual Background.

Plaintiff is a traditional taxi company based in Santa Ana, California. (Compl. ¶ 10.) Plaintiff alleges that although Rasier-CA, LLC has been designated a TNC by the CPUC, the Uber Defendants operate *de facto* taxis. (*Id.* ¶¶ 14, 41.)  According to Plaintiff, "[b]eginning as early as 2011," the Uber Defendants began to operate in Orange County even though they did not hold a taxi license or any other form of license. (*Id.* ¶ 38.)  As of September 2013, Plaintiff had 327 traditional taxis operating in Orange County and held one of three taxi franchises in the city of Anaheim. (*Id.* ¶¶ 19-24, 29-30, 51.)  Plaintiff alleges that although it has worked to expand its business, it has been unable to obtain a permit to operate at John Wayne Airport ("JWA"), which only allows a few taxi companies to collect fares from the airport.  Plaintiff also alleges it has been unable to expand the number of taxis it is allowed to operate in Anaheim. (*Id.*, ¶ 10, 31-33.)

According to Plaintiff, the Uber Defendants were not subject to the same type of regulations imposed on Plaintiff by the Orange County Taxi Administrative Program ("OCTAP"). Plaintiff alleges "over time[,] some of those deficiencies have been addressed, but the background checks on Uber drivers, safety checks of their vehicles, and rules for the maintenance of commercial liability insurance remain quite deficient." (*Id.* ¶ 40; *see also id.* ¶ 42.)  Plaintiff alleges the Uber Defendants operate *de facto* taxis "in all of the areas in which [Plaintiff] operates authentic" taxis, including Anaheim and all of Orange County. (*Id.* ¶ 53.) "On a daily basis" the Uber Defendants compete directly with Plaintiff "for the same fares that [Plaintiff] would otherwise obtain." (*Id.* ¶ 54.)  According to Plaintiff, because the Uber Defendants charge more but operate with fewer overhead expenses and are exempt from limits placed on the number of

---

[8]  The Court takes judicial notice of the existence of the Phase II decision, the rulings set forth therein, and the fact that statements were made by the CPUC. The Court does not take judicial notice of any disputed facts contained in the document. *See Lee*, 250 F.3d at 689-90; Fed. R. Evid. 201.

4

vehicles that can operate in a given city, they are able to take fares away from Plaintiff. (*See, e.g., id.* ¶¶ 54, 61-62.) Plaintiff also alleges the Uber Defendants market themselves "as comparable to taxis service or as offering the same services as an authentic taxi, while making false and misleading statements about its safety and background checks[.]" (*Id.* ¶ 47; *see also id.* ¶¶ 70, 79.)

Based on these and other allegations, which the Court shall address as necessary, Plaintiff brings claims against the Uber Defendants for: (1) alleged violations of California's unfair competition law, Business and Professions Code sections 17200, *et seq.* (the "UCL Claim"); (2) alleged violations of California's unfair practices act, Business and Professions Code section 17000, *et seq.* (the "UPA Claim"); (3) alleged violations of California's false advertising law, Business and Professions Code sections 17500, *et seq.* (the "FAL Claim").

## ANALYSIS

**A.  Applicable Legal Standards.**

**1.  Federal Rule of Civil Procedure Rule 12(b)(1).**

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In addition, a motion to dismiss for lack of standing is evaluated under Federal Rule of Civil Procedure 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Where a defendant makes a facial attack on jurisdiction, factual allegations of the complaint are taken as true. *Federation of African Am. Contractors*, 96 F.3d at 1207; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Federation of African Am. Contractors*, 96 F.3d at 1207.

In contrast, a factual attack on subject matter jurisdiction occurs when a defendant challenges the actual lack of jurisdiction with affidavits or other evidence. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "When the defendant raises a factual attack, the plaintiff

must support … jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). The district court may resolve those factual disputes itself, unless "the existence of jurisdiction turns on disputed factual issues[.]" *Id.* at 1121-22 (citations omitted).

### 2. Federal Rule of Civil Procedure 12(b)(6).

On a motion to dismiss under Rule 12(b)(6), the Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

### 3. Article III Standing Requirements.

A party seeking to invoke the federal court's jurisdiction bears the burden of demonstrating that it has standing to sue. *Lujan*, 504 U.S. at 561. If a plaintiff fails to satisfy the constitutional requirements to establish standing, a court lacks jurisdiction to hear the case and must dismiss the complaint. *See Valley Forge Christian Col. v. Americans United for Separation of Church and State*, 454 U.S. 464, 475-76 (1982). In order for a plaintiff to establish Article III standing, it must show it: "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the

6

1  defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v.*

2  *Robins*, __ U.S. __, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61). "Where, as

3  here, a case is at the pleading stage, [a plaintiff] must 'clearly … allege facts demonstrating' each

4  element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

5        In addition, a plaintiff "must demonstrate standing separately for each form of relief

6  sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167,

7  185 (2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (finding that although

8  plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief)).

9  **B.  Plaintiff Has Failed to Show It Has Standing to Seek Prospective Injunctive Relief.**

10       In its opposition to the Uber Defendants' motion to dismiss, Plaintiff asserted that

11 injunctive relief "is not now 'on the table[.]'" According to Plaintiff, it went out of business in

12 April 2016 but remains an active corporation and in good standing. (*See, e.g.,* Dkt. No. 23, Opp.

13 Br. to Uber Defendants' Mot. at 14:17-18.) In light of that statement, the Court raised the issue of

14 whether that fact would impact Plaintiff's standing to seek injunctive relief. *See Los Angeles v.*

15 *County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (stating that standing is jurisdictional; it

16 "cannot be waived by any party, and … a court can, and indeed must, resolve any doubts about

17 this constitutional issue sua sponte"). The Court ordered supplemental briefing from Plaintiff to

18 determine whether it continues to seek injunctive relief and, if so, on what claims. The Court also

19 directed Plaintiff to address the facts to support standing to seek that relief. (Dkt. No. 54, Order

20 Requiring Supplemental Briefing.)

21       Plaintiff seeks to preserve its right to seek injunctive relief on its claims against the Uber

22 Defendants under the UCL and the UPA. (Dkt. No. 55, Plaintiff's Supp. Br. on Injunctive Relief

23 at 3:3-9 (hereinafter "Dkt. No. 55").) "Past exposure to harmful or illegal conduct does not

24 necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer

25 adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Therefore, in

26 order to satisfy the pleading requirements for standing to seek prospective injunctive relief in this

27 case, Plaintiff must allege facts to show it faces a "'real or immediate threat … that [it] will again

28 be harmed in a similar way.'" *Id.* (quoting *Lyons*, 461 U.S. at 111); *see also Lyons*, 465 U.S. at

109 (plaintiff must show it is "realistically threatened by a repetition" of the violation to have standing to seek injunctive relief).

Plaintiff reaffirms that it is no longer in business, and it states it has "not sold or assigned its business name, assets, rights or licenses to another taxicab company[.]" (Dkt. No. 55 at 3:23-25.) However, Plaintiff neither explains how those facts show it is likely to be harmed by a repetition of any of the conduct described in the Complaint nor explains how an injunction would redress any on-going injuries, to the extent such injuries exist. Accordingly, the Court concludes that Plaintiff has not met its burden to show it has standing to seek injunctive relief on the UCL and UPA claims against the Uber Defendants. However, the Court cannot conclude on this record that amendment would be futile. If Plaintiff can in good faith and in compliance with its obligations under Rule 11 allege facts to show it has standing to seek injunctive relief, even though it no longer is in business, it may do so.[9]

**C.    The Court Grants, in Part, and Denies, in Part, the Uber Defendants' Motion to Dismiss.**

The Uber Defendants move to dismiss Plaintiff's UCL and UPA claims on the basis that these claims, or portions thereof, fall within the exclusive jurisdiction of the CPUC. The Uber Defendants also raise a challenge to Plaintiff's statutory standing under the UCL and the FAL, on the basis that Plaintiff fails to allege facts showing causation and reliance. They also argue that Plaintiff fails to allege facts to show it has a remedy under either of those statutes.[10] The Uber Defendants argue Plaintiff fails to allege facts to show a violation of the UPA.

---

[9]    Although Uber did not move to dismiss the Lanham Act claim, Plaintiff alleges that it seeks injunctive relief on that claim. (Compl. at 44:9-10.) Therefore, this ruling applies to Plaintiff's standing to seek injunctive relief on the Lanham Act claim. In addition, although Plaintiff did not refer to the FAL claim in its supplemental brief, the Court will grant Plaintiff leave to amend its request for injunctive relief on that claim, if it can cure the other deficiencies identified in this Order.

[10]   The Uber Defendants also moved to dismiss the Declaratory Relief claim, but they are not named as a Defendant in that claim. The Uber Defendants also moved, in the alternative, to strike Plaintiff's requests for restitution. In light of the Court's ruling on the motion to dismiss, the Court DENIES, AS MOOT, the Uber Defendants' alternative motion to strike.

8

**1. The *DeFacto* Taxi Allegations.**

A common theme of Plaintiff's claims under the UCL and the UPA is the Uber Defendants unfairly compete with Plaintiff and engage in unlawful conduct, because they do not comply with regulations applicable to authentic taxi companies, which in Plaintiff's view are more stringent than the regulations applied to TNCs. (*See, e.g.,* Compl. ¶¶ 54.a-54.d, 55, 62.) The Uber Defendants argue any claims based on the allegation that they operate a *de facto* taxi service are barred by California Public Utilities Code section 1759(a). Section 1759(a) provides:

> [n]o court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order of decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court.

In order to determine whether Section 1759(a) bars Plaintiff's claims, the Court must consider: "(1) whether the [CPUC] had the authority to adopt a regulatory policy on the subject matter of the litigation; (2) whether the [CPUC] had exercised that authority; and (3) whether action in the case before the court would hinder or interfere with the [CPUC's] exercise of regulatory authority." *Kairy v. SuperShuttle, Intern.*, 660 F.3d 1146, 1150 (9th Cir. 2011) (citing *San Diego Gas & Electric Co. v. Superior Court (Covalt)*, 13 Cal. 4th 893, 923-935 (1996)).[11]

The Uber Defendants argue the allegations in the Complaint satisfy the first two prongs of the *Covalt* test. Although Plaintiff contends the CPUC Defendants exceeded their authority, it also alleges the CPUC has the authority to adopt regulatory policies for transportation companies and alleges the CPUC exercised that authority over the Uber Defendants. (Compl. ¶ 15; *see also id.* ¶¶ 35, 41-42.) The Court concludes the first two prongs of the *Covalt* test are satisfied. *See Rosen II*, 164 F. Supp. 3d at 1174 (finding plaintiff's allegations satisfied first two prongs of the *Covalt* test). The Court turns to whether this case would "would hinder or interfere with the [CPUC's] exercise of regulatory authority." *Kairy*, 660 F.3d at 1150.

---

[11] The *Covalt* test was "designed to resolve conflicts between actions brought against a public utility under Public Utility Code § 2106," which provides for a private right of action, "and the jurisdiction-stripping provision in § 1759." *Kairy*, 660 F.3d at 1149.

In *Rosen II*, the court stated that the "crux of [plaintiff's] CPUC-based claims appears to be his allegation that, until Uber's subsidiary was issued a permit …, Uber was unregulated and operating illegally in … California." 164 F. Supp. 3d at 1174 (internal quotations and citations omitted). The court found the allegations in the complaint showed the CPUC had evaluated services like Uber and had finalized regulations to govern those services. *Id.* at 1174-75. It also concluded those proceedings were "not the kinds of 'single matter[s] such as … approval of a tariff or a merger." *Id.* at 1175. Thus, it reasoned the plaintiff was "asking [it] to decide whether Uber has failed to follow CPUC regulations" and to take action that would "hinder or interfere with a broad and continuing CPUC program." *Id.* Therefore, the court concluded the third prong of the *Covalt* test was satisfied. *Id.* at 1177; *cf. Goncharov v. Uber Technologies, Inc.*, San Francisco Superior Court Case No. CGC-12-526017 ("*Goncharov*"), Order Granting Motion for Judgment on the Pleadings at 9:3-13, 10:20-11:3 (Dec. 8, 2015) (concluding that where "gravamen of each of the causes of action in" complaint was Uber operated "as an unlicensed taxicab service," third prong of *Covalt* test was satisfied).[12]

Plaintiff does not allege the Uber Defendants failed to comply with regulations issued by the CPUC. Instead, it argues the Uber Defendants should not be subject to those regulations at all, which distinguishes the facts here from the facts alleged in *Rosen II*. However, Plaintiff does allege the Uber Defendants do not qualify either as a charter-party carrier or as a TNC, because their trips are not prearranged. (*See* Compl. ¶ 45.) It also alleges the Uber Defendants' conduct is unlawful, because they operate "*de facto* taxis without complying with the OCTAP Regulations." (*Id.* ¶ 54.d; *see also id.* ¶ 62.) Further, in Plaintiff's view "the ultimate issue" in this case is whether "Uber drivers are operating '*de facto*' taxicabs…." (Opp. Br. to Uber Defs.' Mot. at 13:12-14.) Thus, some portion of Plaintiff's UCL claim is premised on allegations that the Uber Defendants conduct is unlawful and unfair because it operates *de facto* taxis but does not comply with regulations applicable to traditional taxi companies. (*See, e.g.,* Compl. ¶¶ 54.c, 54.d, 55.) In sum, the "gravamen" of their claims is that the Uber Defendants operate an unlicensed and

---

[12] This Order is attached as Exhibit Q to Uber's Request for Judicial Notice.

1 unregulated taxi service. However, if the Court were to find for Plaintiff and conclude that Uber
2 should be subject to requirements applicable to regular taxis, that finding would "hinder or
3 interfere with a broad and continuing CPUC program." *Rosen II*, 164 F. Supp. 3d at 1175.
4     Accordingly, the Court grants, in part, the Uber Defendants' motion to dismiss on this
5 basis. Because the Court cannot say amendment would be futile, the Court will grant Plaintiff
6 leave to amend if it can allege facts "that would not hinder ongoing CPUC supervision and
7 regulation." *Id.* at 1177.

**D.  The Court Dismisses, in Part, the UCL and FAL Claims for Lack of Statutory Standing, With Leave to Amend.**

10     The Uber Defendants argue Plaintiffs fail to allege facts to show causation or reliance and,
11 thus, fail to allege facts to show they have statutory standing to seek relief under the UCL and the
12 FAL. In order to show they have statutory standing under those statutes, Plaintiff must allege it
13 "'has suffered injury in fact and has lost money or property as a result of a violation of'" the UCL
14 or the FAL. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011) (noting that Proposition
15 64 "substantially reviewed the … standing requirements" of these statutes and quoting Cal. Bus. &
16 Prof. Code §§ 17204, 17535); *accord In re Tobacco II Cases*, 46 Cal. 4th 298, 325-26 (2009).
17     Plaintiff alleges the Uber Defendants violated the FAL and "engaged in false advertising
18 by making and disseminating statements to consumers to the effect that [their] drivers were subject
19 to more rigorous background checks and [their] rides were 'safer' than taxi rides, or the 'safest'
20 ride available." (Compl. ¶ 79; *see also id.* ¶¶ 78, 70.a-70.b.) The Uber Defendants argue Plaintiff
21 fails to show it has standing to pursue this claim, because it does not allege it relied on any of the
22 allegedly false advertising. To show it has standing under the FAL, Plaintiff must allege that its
23 economic injury "was the result of, i.e., *caused by* the … false advertising that is the gravamen of
24 the claim." *Kwikset*, 51 Cal. 4th at 322 (emphasis in original).
25     In *Kwikset*, the court stated that the "phrase as a result of in its plain and ordinary sense
26 means caused by and requires a showing of a causal connection or reliance on the alleged
27 misrepresentation." *Id.* at 326 (internal quotations and citations omitted). Because the plaintiffs'
28 claims involved false advertising and misrepresentations to consumers, the *Kwikset* court found its

discussion of the causation element set forth in *In re Tobacco II* was controlling. *Id.* "Recognizing that 'reliance is the causal mechanism of fraud[,]' … we held that a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.'" *Id.* at 326-27 (quoting *In re Tobacco II*, 46 Cal. 4th at 306, 326)). In sum, in order to establish the requisite causation in a claim based on allegedly false advertising under the FAL or the UCL, as is the case here, a "plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact that it was made." *Id.* at 327 n.10; *cf. True v. American Honda Motor Co., Inc.*, 520 F. Supp. 2d 1175, 1183 (C.D. Cal. 2007) (finding that, under the FAL, "a plaintiff satisfies the reliance element with an allegation that a false or deceptive advertisement induced the plaintiff to alter his position to his detriment") (internal quotations and citations omitted).

This case does not involve claims brought by consumers, which distinguishes it from *Kwikset* and *In re Tobacco II*. In *In re Tobacco II*, the court noted the purpose of Proposition 64 "was to impose limits on *private* enforcement actions under the UCL[.]" 46 Cal. 4th at 326 (emphasis added). In light of that purpose, the court concluded the phrase "as a result of" imposed "an actual reliance requirement on plaintiffs prosecuting a *private* enforcement action under the UCL's fraud prong." *Id.* It also "emphasize[d] that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. … There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application[.]" *Id.* at 325 n.17.

"No California court has addressed" whether "competitor plaintiffs must plead their own reliance or whether pleading consumer reliance is sufficient for fraudulent business practice claims brought by competitors." *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. 14-cv-00437-CW, 2015 WL 3377662, at *7 (N.D. Cal. Feb. 24, 2015). There is a split among district courts sitting in California on this issue, and the majority view appears to be that a plaintiff must

12

be able to allege its own reliance "rather than the reliance of third parties." *L.A. Taxi*, 114 F. Supp. 3d at 866 (citing cases); *see also Heartland Payment*, 2015 WL 3377662, at *7-*8 (denying motion to dismiss FAL claim where plaintiff alleged facts to show it relied on the defendant's alleged misrepresentations, in addition to consumer reliance, including lowering fees in order to compete); *cf. Goncharov*, Order Sustaining Defendant's Demurrer to Second Amended Complaint at 5:2-15 (Apr. 7, 2016) (sustaining demurrer to FAL claim, where plaintiffs did not allege they relied on defendant's alleged misrepresentations and conceded they could not allege reliance on amendment).[13]

In *L.A. Taxi*, the plaintiff's claims were based on allegations that are similar to the allegations at issue in this case, namely that the Uber Defendants deceived riders by suggesting that their service is safer than riding in a traditional taxi. 114 F. Supp. 3d at 857-58. The *L.A. Taxi* court stated that "'[r]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of *the plaintiff's* injury-producing conduct.'" *Id.* at 867 (quoting *Tobacco II*, 46 Cal. 4th at 326) (emphasis as in *L.A. Taxi*). It also stated that, in general, a traditional fraud claim cannot be premised on third-party reliance. *Id.* (citing, *inter alia*, *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1088 (1993)). Therefore, it dismissed Plaintiff's claims under the UCL. *Id.* The court in *L.A. Taxi* addressed this issue in the context of the plaintiff's UCL claim and permitted the FAL claim to proceed.[14] However, as set forth above, the statutory standing requirement for private enforcement actions under the FAL is the same. *Kwikset*, 51 Cal. 4th at 326-27.

In *O'Connor v. Uber Technologies, Inc.*, the plaintiffs were Uber drivers who alleged Uber's representations regarding gratuities were misleading. According to the plaintiffs, Uber suggested that its drivers received the total gratuity when, in reality, they only received a portion

---

[13] This Order is attached as Exhibit X to the Uber Defendants' Supplemental Request for Judicial Notice.

[14] It appears the Uber Defendants did not argue that the failure to allege reliance also prevented the plaintiff from establishing statutory standing under the FAL. *See L.A. Taxi Cooperative, Inc., et al. v. Uber Technologies, Inc., et al.*, No. 12-cv-01257-JST, Dkt. Nos. 16, 35.

1 of the gratuity and Uber kept the remainder. 58 F. Supp. 3d 989, 993-94 (N.D. Cal. 2014). The

2 court recognized that the California Supreme Court imposed "'an actual reliance requirement on

3 plaintiffs prosecuting a private enforcement action under the UCL's fraud prong'" and cited to

4 cases which, in light of that precedent, "recognized that UCL fraud plaintiffs must allege their own

5 reliance – not the reliance of third parties – to have standing under the UCL." *Id.* at 1002 (quoting

6 *Tobacco II*, 46 Cal. 4th at 326); *see also id.* (citing cases). The court concluded that the "clear

7 import" of the plaintiffs' claim was that "Uber's *customers* relied on the alleged

8 misrepresentations," and it determined the plaintiffs could not state a claim under the fraudulent

9 prong of the UCL. Therefore, it dismissed that aspect of the UCL claim with prejudice. *Id.* at

10 1003, 1008; *see also U.S. Legal Support, Inc. v. Hofioni*, No. No. CIV S-13-01770 LKK/AC, 2013

11 WL 6844756, at *15 (E.D. Cal. Dec. 20, 2013) (dismissing UCL claim based on alleged violations

12 of fraudulent prong where plaintiff, non-consumer of defendants' services, could not demonstrate

13 reliance on defendant's fraudulent statements).

14 In contrast to these cases is *VP Racing Fuels, Inc. v. General Petroleum Corp.*, No. 2:09-

15 cv-02067-MCE-GGH, 2010 WL 1611398 (E.D. Cal. Apr. 20, 2010). In that case, the plaintiff,

16 one of the defendants' competitors, alleged the defendants misrepresented the octane level of

17 racing fuel. The plaintiff alleged it was "harmed by consumer reliance on such

18 misrepresentations, which has enabled [d]efendants to price their 100 Octane product below the

19 true market value of bona fide, 100 Octane fuel[,] … has resulted in competitive harm and has

20 unfairly diverted sales to [d]efendants." *Id.*, 2010 WL 1611398, at *1. The court concluded the

21 plaintiff sufficiently alleged facts to show it had Article III standing and concluded the facts were

22 sufficient to state a claim under the fraudulent prong of the UCL and under the FAL. *Id.*, 2010

23 WL 1611398, at *2-*3. The court recognized that the UCL requires a plaintiff to allege it "'lost

24 money or property as a result of unfair competition.'" *Id.*, 2010 WL 1611398, at *2 (quoting Bus.

25 & Prof. Code § 17204). It did not, however, address the California Supreme Court's interpretation

26 of the phrase "as a result of" as set forth in *Kwikset* and *In re Tobacco II*. It stated only that

27 "[p]laintiff is a corporation bringing the UCL cause of action as a competitor, and consequently, is

28 not the type of plaintiff whose standing was targeted by California voters through Proposition 64."

14

*Id.*, 2010 WL 1611398, at *3 n.3.

In light of the California Supreme Court's interpretation of the statutory standing requirements under both the UCL and the FAL for private plaintiffs, as set forth in *Kwikset* and *In Re Tobacco II*, and in particular its explanation of the reliance requirement, the Court finds the reasoning in *L.A. Taxi* and *O'Connor* more persuasive than the reasoning in *VP Racing Fuels*. Further, because the standing requirements are the same under the FAL and the UCL, the Court sees no reason why the reasoning of those cases should not be applied to Plaintiff's FAL claim. Therefore, it concludes that a competitor plaintiff must be able to allege its own reliance on allegedly false misrepresentations to establish standing under the FAL. Plaintiff does not allege facts to show that it relied to its detriment on the Uber Defendants' allegedly false advertising.

Accordingly, the Court grants, in part, the Uber Defndants' motion to dismiss the FAL claim on this basis. Because the Court cannot say it would be futile, the Court grants Plaintiff leave to amend this claim if it can, in good faith and in compliance with its obligations under Rule 11, plead facts to show how it relied to its detriment on the allegedly false statements. *Cf. Heartland*, 2015 WL 3377662, at *7.

The Uber Defendants' also attack Plaintiff's allegations regarding causation on its UCL claim. Plaintiff asserts that its UCL claim is not premised on the "fraudulent" prong of the statute. (Opp. Br. to Uber Defendants' Mot. at iii:20-21.) However, its argument is not entirely clear on that point. (*See id.* at 12:10-12 (Plaintiff "'borrowed' the FAL to include it under the umbrella of the UCL. [Plaintiff's] FAL claims were based *not only* on the 'fraudulent' prong, but on the 'unlawful' (and chiefly) the 'unfair' prongs[.]"). It is the UCL that prohibits unfair, unlawful, or fraudulent conduct. Thus, to the extent Plaintiff seeks relief under the UCL's fraudulent prong or seeks relief under the unlawful prong of the UCL based on alleged violations of the FAL or alleged misrepresentations, the claim fails for the reasons set forth above. *See L.A. Taxi,* 114 F. Supp. 3d at 866-67; *Rosen II*, 164 F. Supp. 3d at 1177-78. Because it is possible that Plaintiff could allege facts demonstrating reliance, the Court will grant Plaintiff leave to amend that aspect of its UCL claim.

The Uber Defendants also argue that "Plaintiff has not alleged that, had [they] complied

15

1    with Orange County taxi regulations, the passenger public who requested transportation services

2    using the Uber App to arrange arise would have hailed Plaintiff's taxis." (Uber Def. Mot. at

3    12:13-15.) Plaintiff has alleged that the Uber Defendants engaged in conduct, such as charging

4    lower rates with lower overhead, with a larger fleet of cars. According to Plaintiffs, as a result of

5    that conduct, they lost money as a result of that unfair competition. While those facts may not

6    support a request for restitution, the Court finds Plaintiff has alleged sufficient facts to show it has

7    standing to pursue a claim under the unlawful or unfair prongs of the UCL, to the extent it can

8    remedy the other defects identified in this Order. *See, e.g., Kwikset*, 51 Cal. 4thg 335-36 ("the

9    standards for establishing standing under section 17204 and eligibility for restitution under section

10   17203 are wholly distinct").

11   **E.     Plaintiff Fails to Allege Facts to Support a Claim for Restitution under the UCL or the FAL.**

12

13   The Uber Defendants also move to dismiss the UCL and the FAL claims on the basis that

14   Plaintiff fails to allege facts to show it is entitled to restitution. It is well-established that damages

15   cannot be recovered pursuant to a UCL claim. *Korea Supply Co. v. Lockheed Martin Corp.*, 29

16   Cal. 4th 1134, 1144 (2003). A plaintiff bringing such a claim is limited to injunctive relief and

17   restitution. *Id.* The same is true under the FAL. *See, e.g., Buckland v. Threshold Enterprises,*

18   *Ltd.*, 155 Cal. App. 4th 798, 819 (2007) ("[L]ike the UCL, remedies for individuals under the FAL

19   are limited to restitution and injunctive relief[.]"), *disapproved of on other grounds by Kwikset*, 51

20   Cal. 4th at 336.

21   An order for "restitution" is defined "as one 'compelling a UCL defendant to return money

22   obtained through an unfair business practice to those persons in interest from whom the property

23   was taken, that is, to persons who had an ownership interest in the property or those claiming

24   through that person." *Korea Supply*, 29 Cal. 4th at 1144-45 (quoting *Kraus v. Trinity*

25   *Management Services, Inc.*, 23 Cal. 4th 116, 126-27 (2000)). "Disgorgement" is a broader remedy

26   and "'may include a restitutionary element, but it is not so limited.'" *Id.* at 1145 (quoting *Kraus*,

27   23 Cal. 4th at 127). Therefore, an order for disgorgement may: (1) "'compel a defendant to

28   surrender all money obtained through an unfair business practice even though not all is to be

16

1   restored to the persons from whom it was obtained or those claiming under those persons[;]'" or

2   (2) require the "'surrender of all profits earned as a result of an unfair business practice regardless

3   of whether those profits represent money taken directly from persons who were victims of the

4   unfair practice.'" *Id.* at 1145 (quoting *Kraus*, 23 Cal. 4th at 127).

5   In *Korea Supply,* the court clarified that disgorgement of profits is allowed in UCL claims

6   only to the extent it constitutes restitution, *i.e.*, profits unfairly obtained to the extent they

7   represent money in which the plaintiff has an ownership interest. *Id.* at 1145, 1148; *see also*

8   *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 699 (2006) (a plaintiff can seek

9   money or property as restitution where such "money or property identified as belonging in good

10  conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's

11  possession") (internal quotations and citation omitted).

12  The Uber Defendants argue Plaintiff fails to allege facts to show that they obtained any

13  money or property in which Plaintiff had an ownership interest. In *L.A. Taxi*, the plaintiffs alleged

14  they were harmed by Uber's conduct because "customers [chose] to use Uber rather than taking a

15  taxi." *L.A. Taxi*, 114 F. Supp. 3d at 859. According to the plaintiffs, that caused them "to lose

16  significant revenue and suffer reputational injury." *Id.* The court granted Uber's motion to

17  dismiss, because it concluded the plaintiffs failed to "allege an ownership interest in any of

18  [Uber's] profits or a 'confirmed' contractual relationship with any of Uber's customers." *Id.* at

19  867. Lacking such allegations, the court found the plaintiffs sought "'the type of nonrestitutionary

20  disgorgement precluded under *Korea Supply*.'" *Id.* (quoting *Luxpro Corp. v. Apple Inc.*, No. 10-

21  cv-03058-JSW, 2011 WL 3566616, at *8 (N.D. Cal. Aug. 12, 2011)); *accord Rosen II*, 164 F.

22  Supp. 3d at 1178 (dismissing FAL and UCL claims, because "[p]laintiff has not alleged any vested

23  interest in [Uber's] profits, but only points to the possibility that Uber's customers would use his

24  taxicab instead").

25  Here, Plaintiff alleges it is entitled to restitution because it "has a vested property right to

26  be one of the only three taxicab companies allowed to pick up taxi fares in Anaheim, and has a

27  vested property right to earn about 20% of the earnings … from picking up of taxi fares in

28  Anaheim." (Compl. ¶ 52; *see also.* Opp. Br. to Uber Defendants' Mot. at 3:23-4:20.) According

1   to Plaintiff, it "has been damaged in the loss of money that it would have earned from fares, had
2   [the Uber Defendants] not directly taken that money from passengers who would have taken a taxi
3   ride with [Plaintiff] instead." (Compl. ¶ 56.)[15]  The Court finds Plaintiff's allegations are
4   analogous to the plaintiffs' allegations in the *L.A. Taxi* and *Rosen II* cases.  Thus, in their current
5   state, the allegations in the Complaint show Plaintiff seeks non-restitutionary disgorgement, which
6   is precluded under *Korea Supply*.

7   Accordingly, the Court grants, in part, the Uber Defendants' motion, and it dismisses the
8   UCL and the FAL claims on this basis as well.  Because the Court cannot say it would be futile,
9   the Court will grant Plaintiff leave to amend to attempt to allege facts that would show it is
10  entitled to restitution.

**2.   The Court Dismisses the UPA Claim.**

Plaintiff alleges the Uber Defendants violated the provisions of the UPA that prohibit locality discrimination and below cost sales.  "It is unlawful for any person engaged in the production, manufacture, distribution or sale of any article or product of general use or consumption, with intent to destroy the competition of any regular established dealer in such article or product, or to prevent the competition of any person who in good faith, intends and attempts to become such dealer, to create locality discriminations."  Cal. Bus. & Prof. Code § 17040.  Plaintiff alleges the Uber Defendants' "creation, advertising, and distributing of its app for ridesharing … constitutes a production, manufacture, distribution or sale of an article or product of general use or consumption within the meaning of" Section 17040.  (Compl. ¶ 60.)  These allegations are no more than legal conclusions couched as fact.  There are no facts to support an claim based on locality discrimination.

Plaintiff also alleges the Uber Defendants have "within the meaning of [the UPA] distributed or sold and continue[] to distribute or sell, *de facto* taxicab services through [their] app at charges which are below costs for [Plaintiff] and the other authentic taxi companies."  (Compl.

---

[15] In its supplemental brief in support of its request for injunctive relief, Plaintiff argues it had to surrender that franchise when it went out of business.  The Court expresses no opinion on whether adding that fact to an amended complaint would be sufficient to state facts supporting a request for restitution.

18

¶ 62.) Based on this allegation, and the parties' argument, Plaintiff suggests the Uber Defendants violated Section 17043, which prohibits "any person engaged in business within this State" from selling "any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition." Cal. Bus. & Prof. Code § 17043. In order to state a claim based on a violation of Section 17043, a plaintiff "must allege defendant's sales price, its cost in the product and its cost of doing business." *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 275 (1983); *see also Eastman v. Quest Diagnostics, Inc.*, 108 F. Supp. 3d 827, 838 (N.D. Cal. 2015). In *G.H.I.I.*, the court found the plaintiffs' pleadings were sufficient even though they had not alleged "a definite cost of doing business," and alleged "on information and belief, based on [their] experience, that the prices charged for records and tapes were 'below' [the defendants'] stated invoice costs plus the unstated cost of doing business." *G.H.I.I.*, 147 Cal. App. 4th at 275-76. Here, however, Plaintiff has not alleged *any* facts regarding the Uber Defendants' prices, the costs of their product, or their costs of doing business.

Accordingly, the Court GRANTS the Uber Defendants' motion to dismiss the UPA Claim. Because the Court cannot conclude it would be futile, the Court will grant Plaintiff leave to amend this claim.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, the Uber Defendants' motion to dismiss. If Plaintiff wishes to file an amended complaint, it may do so by no later than April 28, 2017. The parties' shall appear for a case management conference on May 19, 2017 at 11:00 a.m., and the parties' joint case management conference statement shall be due on May 12, 2017.

**IT IS SO ORDERED.**

Dated: March 31, 2017

JEFFREY S. WHITE
United States District Judge