1  MARSHALL C. WALLACE (BAR NO. 127103)
   JEREMY N. GILLICK (BAR NO. 307101)
2  ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
3  Three Embarcadero Center, 12th Floor
   San Francisco, CA  94111-4074
4  Phone:  (415) 837-1515
   Fax:  (415) 837-1516
5  E-Mail:  mwallace@allenmatkins.com
            jgillick@allenmatkins.com
6
   MARISSA M. DENNIS (BAR NO. 245027)
7  ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
8  865 South Figueroa Street, Suite 2800
   Los Angeles, California 90017-2543
9  Phone:  (213) 622-5555
   Fax:  (213) 620-8816
10 E-Mail:  mdennis@allenmatkins.com

11 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.; RASIER, LLC;
12 RASIER-CA, LLC

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15

16 A WHITE AND YELLOW CAB, INC.,         Case No. 4:15-05163-JSW

17         Plaintiff,                    **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES IN SUPPORT OF UBER**
18         vs.                           **DEFENDANTS' MOTION TO DISMISS**
                                         **PLAINTIFF'S FIRST AMENDED COMPLAINT**
19 UBER TECHNOLOGIES, INC. et al.,
                                         Date:    August 11, 2017
20         Defendants.                   Time:    9:00 a.m.
                                         Ctrm:    9
21                                       Judge:   Hon. Jeffrey S. White

22                                       Trial Date:  N/A

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

## SUMMARY OF ARGUMENT

On March 31, 2017, the Court granted in part Uber's Motion to Dismiss, permitting Plaintiff to file an amended complaint *if* it could allege facts (1) the adjudication of which "would not hinder ongoing CPUC supervision and regulation;" (2) that would show it is entitled to restitution, and (3) regarding Uber's prices, the costs of their product, or their costs of doing business. Order [Dkt. No. 64] pp. 11, 18-19. Plaintiff's First Amended Complaint ("FAC") fails to remedy any of these deficiencies specifically identified by the Court relating to its Unfair Competition Law ("UCL") and Unfair Practices Act ("UPA") claims. The Court should not hesitate to dismiss them again, this time with prejudice.

The gravamen of Plaintiff's UCL and UPA claims is that Uber operates "de facto taxis" in violation of local taxi regulations. As this Court and all other courts to examine this issue have found, the California Public Utilities Commission ("CPUC") has exercised its jurisdiction to regulate Uber as a transportation network company ("TNC"), finding that Uber does not provide taxi services. Because Uber is under the jurisdiction of the CPUC, Plaintiff's claims impermissibly invade the exclusive jurisdiction of the CPUC. Cal. Pub. Util. Code § 1759; *San Diego Gas and Elec. Co. v. Super. Ct.*, 13 Cal. 4th 893, 918 (1996). Plaintiff has not even attempted to plead new facts avoiding that exclusive jurisdiction bar. The Court should dismiss Plaintiff's First and Second Claims for Relief under the UCL and UPA without leave to amend because it lacks jurisdiction over those claims.

Plaintiff's UCL cause of action also fails to state a remedy as a matter of law. Plaintiff no longer seeks injunctive relief, and still fails to allege facts showing a claim for restitution under the UCL. Plaintiff's claim under the UPA fails as a matter of law because Plaintiff continues to allege that Uber sold products or services below *Plaintiff's* costs, not *Uber's* costs as the law requires. Plaintiff's additional anecdotal allegations regarding Uber's costs do not begin to meet the strict pleading requirements under the UPA.

Plaintiff has demonstrated it has no ability to amend its complaint to state a viable claim. As such, the Court should dismiss the UCL and UPA claims without leave to amend.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1041205.04/SF                                          -i-

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

    A.    The Court's March 31, 2017 Order ........................................................... 3

    B.    The Allegations in Plaintiff's First Amended Complaint............................ 3

        1.    CPUC Jurisdiction................................................................................ 3

        2.    UCL Allegations - Restitution ......................................................... 4

        3.    UPA Allegations ................................................................................ 5

III.  LEGAL ANALYSIS ........................................................................................... 6

    A.    Plaintiff's *De Facto* Taxi Claims Ask The Court To Interfere With The CPUC's Asserted Jurisdiction ........................................................ 6

    B.    This Case Is An Improper Collateral Attack On The CPUC's Decisions ........................................................................................................ 7

    C.    Plaintiff Fails To Allege Facts Sufficient To State A Claim Under the UCL or the UPA............................................................................ 8

        1.    Plaintiff Has Failed To Allege A UCL Remedy .............................. 8

        2.    Plaintiff Fails To State A Claim Under The Unfair Practices Act (UPA)............................................................................ 12

IV.   THE COURT SHOULD DENY LEAVE TO AMEND ....................................... 15

V.    CONCLUSION ................................................................................................. 15

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Anchor Lighting v. So. Cal. Edison Co.,*
142 Cal. App. 4th 541 (2006)...................................................................... 7

*Colgan v. Leatherman Tool Group, Inc.,*
135 Cal. App. 4th 663 (2006)..................................................................... 11

*Cooney v. Cal. P.U.C.,*
2014 U.S. Dist. LEXIS 165780 (N.D. Cal. 2014)..................................... 15

*Cortez v. Purolator Air Filtration Products Co.,*
23 Cal. 4th 163 (2000).............................................................................. 8, 9

*G.H.I.I. v. MTS, Inc.,*
147 Cal. App. 3d 256 (1983)...................................................................... 14

*Hladek v. City of Merced,*
69 Cal. App. 3d 585 (1977)................................................................... 12, 13

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003)......................................................................... 8, 11

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.,*
114 F. Supp. 3d 852 (N.D. Cal. 2015) ........................................................ 9

*MAI Systems Corp. v. UIPS,*
856 F. Supp. 538 (N.D. Cal. 1994) ............................................................. 9

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.,*
2013 U.S. Dist. LEXIS 89208 (N.D. Cal. June 25, 2013) ....................... 14

*Rosen v. Uber Technologies, Inc.,*
164 F. Supp. 3d 1165 (N.D. Cal. 2016) ..................................... 1, 6, 9, 11

*San Diego Gas and Elec. Co. v. Super. Ct.,*
13 Cal. 4th 893 (1996)........................................................................ i, 1, 6

*SkinMedica, Inc. v. Histogen Inc.,*
869 F. Supp. 2d 1176 (S.D. Cal. 2012) .................................................... 11

## **Statutes**

Cal. Bus. & Prof. Code § 17024 ................................................................ 12

Cal. Bus. & Prof. Code § 17024(1) ........................................................... 12

Cal. Bus. & Prof. Code § 17043 ................................................................ 13

Cal. Pub. Util. Code § 1756(a) ......................................................... 2, 7, 8

Cal. Pub. Util. Code § 1759............................................................................ i

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1041205.04/SF                                            (ii)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page(s)**

**Other Authorities**

Cal. Antitrust and Unfair Competition Law,
    2015 Revised Edition § 18.03[C] .................................................................... 12

**Treatises**

8 Witkin, *Summ. of Cal. Law, Constitutional Law*, § 1108
    (10th ed. 2005) ............................................................................................... 7

**Constitutional Provisions**

Cal. Const., Art. XII, § 3 ..................................................................................... 13

Cal. Const., Art. XII, § 6 ..................................................................................... 13

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1041205.04/SF

(iii)

I.    **INTRODUCTION**

On March 31, 2017, the Court issued an Order granting in part Uber's Motion to Dismiss finding that:  (1) Plaintiff's UCL and UPA claims were based on Uber's alleged operation of a "de facto taxicab" service and thus fall within the exclusive jurisdiction of the CPUC, (2) Plaintiff's UCL and False Advertising Law claims also failed because Plaintiff failed to allege its own reliance to establish standing, and impermissibly sought non-restitutionary disgorgement, and (3) Plaintiff failed to allege any facts to support a UPA claim.  Though Plaintiff has added a number of superfluous allegations against Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") in its First Amended Complaint ("FAC"), the gravamen of Plaintiff's failed Complaint remains.

Plaintiff has disregarded the Court's clear instruction to allege only facts "that would not hinder ongoing CPUC supervision and regulation."  Instead, Plaintiff's UCL and UPA claims continue to be based on Uber's alleged operation of "de facto taxicabs" in violation of regulations governing taxis.  Plaintiff alleges that Uber did not charge taxi fares, did not comply with regulations for "authentic taxicabs," did not carry insurance required for "authentic taxicab companies," and violated other laws which govern "authentic taxicab companies."  As the Court stated in its prior Order dismissing Plaintiff's claims, "if the Court were to find for Plaintiff and conclude that Uber should be subject to requirements applicable to regular taxis, that finding would 'hinder or interfere with a broad and continuing CPUC program.' " March 31, 2017 Order [Dkt. No. 64], 11:1-3, quoting *Rosen v. Uber Technologies, Inc.,* 164 F. Supp. 3d 1165, 1175 (N.D. Cal. 2016) ("*Rosen II*").  Accordingly, Plaintiff's UCL and UPA claims must be dismissed because Cal. Pub. Util. Code § 1759 precludes courts from adjudicating any claims that might "hinder or interfere" with the CPUC's jurisdiction.  *San Diego Gas and Electric Company v. Superior Court*, 13 Cal. 4th 893, 918 (1996).

Plaintiff also continues to assert claims against the CPUC, alleging the CPUC acted unconstitutionally and violated Plaintiff's civil rights by regulating Uber and other app-

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1041205.04/SF

1   based ride request services.  These assertions only underscore that the relief Plaintiff is

2   seeking interferes with the CPUC's asserted jurisdiction.  What's more, the CPUC's

3   presence as a defendant here raises another defense:  Cal. Pub. Util. Code § 1756(a)

4   requires any challenge to a CPUC decision to be made by writ to the California Court of

5   Appeal or Supreme Court.  Plaintiff never made such a claim.  Put simply, Plaintiff's "de

6   facto taxi" claims are also barred under Section 1756(a) as an improper collateral attack in

7   the wrong court on the CPUC's decisions.

8        Finally, even if the CPUC did not have exclusive jurisdiction over Plaintiff's "de

9   facto taxi" claims, its claims still fail as a matter of law.  The FAC continues to fail to state

10  a claim under the UCL and UPA.  Plaintiff's allegations show that it impermissibly seeks

11  damages, which are unavailable under the UCL.  Further, Plaintiff's new allegations to its

12  UPA claims also do not save it from dismissal because Plaintiff continues to fail to allege

13  that Uber sold its products below its own costs, rather than Plaintiff's costs, as the law

14  requires, and because Plaintiff's anecdotal allegations regarding Uber's costs do not begin

15  to meet the strict pleading requirements under the UPA.

16       Accordingly, Uber requests that the Court dismiss Plaintiff's first and second causes

17  of action under the UCL and UPA, without leave to amend, and allow Plaintiff to proceed

18  only on its Lanham Act false advertising claim, which Uber does not here challenge.

19  **II.    <u>BACKGROUND</u>**

20       Plaintiff filed its original complaint in this case on November 10, 2015, alleging

21  four causes of action against Uber for violation of the UCL, Cal. Bus. & Prof. Code

22  §§ 17200 *et seq.*, the UPA, Cal Bus. & Prof. Code §§ 17000 *et seq.*, the Lanham Act, 15

23  U.S.C. § 1125(a), and the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

24  §§ 17500 *et seq.*  Plaintiff also sued the CPUC and five of its commissioners alleging that

25  the CPUC acted unconstitutionally and violated its civil rights by asserting jurisdiction

26  over and regulating TNCs.  Uber promptly moved to dismiss Plaintiff's UCL, UPA, and

27  FAL claims, arguing that the Court lacked jurisdiction and that Plaintiff could not allege

28  facts sufficient to support those claims.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1041205.04/SF

-2-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

**A.  The Court's March 31, 2017 Order**

On March 31, 2017, this Court issued an Order Granting in Part and Denying in Part Uber's Motion to Dismiss ("Order").  [Dkt. No. 64, p. 1.]  The Court dismissed Plaintiff's claims for four reasons:  (1) the Court lacked jurisdiction because resolution of Plaintiff's claims would "hinder ongoing CPUC supervision and regulation" in violation of Cal. Pub. Util. Code § 1759 (*Id*. at 11); (2) Plaintiff failed to allege reliance to support its claims under the FAL and the UCL's fraudulent prong (*Id*. at 15); (3) Plaintiff failed to allege restitution under the FAL or UCL (*Id*. at 16); and (4) Plaintiff failed to allege facts to support a claim based on locality discrimination, or regarding Uber's prices, the cost of its product, or the cost of doing business, and so could not state a claim under the UPA (*Id*. at 19).  In addition, the Court found that Plaintiff lacked standing to seek injunctive relief under either the UCL or UPA because Plaintiff went out of business in April 2016.  *Id*. at 7-8.  The Court permitted Plaintiff to amend its complaint only *if* it could state claims whose resolution would not require interference with the CPUC's jurisdiction, *if* it could allege entitlement to restitution, and *if* it could allege facts regarding Uber's pricing and costs.  Plaintiff has failed in every respect.

**B.  The Allegations in Plaintiff's First Amended Complaint**

Despite the Court's clear message to Plaintiff that it needed to *change* its allegations if it wished to state any viable claims against Uber, Plaintiff's FAC primarily adds more *detail* to its defective claims under the UCL and UPA.  The few new allegations Plaintiff adds do nothing to remedy the fatal defects identified by the Court.

1.  CPUC Jurisdiction

Like the original complaint, the gravamen of the FAC is *still* Uber's alleged operation of a "*de facto* taxicab fleet in direct competition" to Plaintiff without complying with local taxi regulations.  FAC ¶ 3.  Indeed, Plaintiff continues to allege Uber unfairly competes by failing to comply with specific taxi regulations.  *See, e.g.*, FAC ¶ 68 ("Uber continues to operate in Orange County and other parts of the State as a *de facto* taxi company, without compliance with any of the taxicab regulations and ordinances,

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF

-3-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1  including those established by the City of Anaheim and the County of Orange at the John

2  Wayne Airport, setting its own prices rather than complying with the taxi pricing required

3  by OCTAP....").

4       Plaintiff also continues to acknowledge the CPUC's jurisdiction over Uber.  FAC

5  ¶ 2 ("Beginning in about 2013 the CPUC, acting under color of law, allowed UBER to

6  operate *'de facto'* taxis … without requiring UBER to comply with ordinary taxicab

7  regulations," by enacting CPUC Decision 13-09-045).  Further, Plaintiff effectively

8  concedes that the CPUC's jurisdiction is dispositive by suing the CPUC, in this very

9  lawsuit, to try to nullify its authority to regulate Uber and other TNCs.  FAC ¶ 4 (Plaintiff

10 seeks a declaration that "the CPUC's creation and implementation of CPUC Regulation 13-

11 09-045" was unconstitutional).

12      In short, Plaintiff has made no serious attempt to plead facts in the FAC avoiding

13 the CPUC's exclusive jurisdiction.

14              2.    UCL Allegations - Restitution

15      Plaintiff's FAC substitutes the word "restitution" for "disgorgement."  Plaintiff's

16 substitution, however, does nothing to change the substance of its original allegation that it

17 had "a vested property right" in "market share."  *See, e.g.*, FAC ¶ 52.  To the contrary, it

18 retains its defective allegation that "every fare that an UBER de facto taxi picked up …

19 was a fare that UBER took directly from A TAXI's drivers...."  *Id.* ¶ 59.  *See also* ¶ 56

20 (Uber "began stealing A TAXI's fares, all to A TAXI's damage...."); ¶ 62 (Plaintiff was

21 "deprived of its vested earnings" because Uber took "that money from passengers who

22 would have taken a ride in an authentic A TAXI taxicab"; ¶ 63 (Uber took fares "that A

23 TAXI would have received instead of UBER, but for UBER's acts of unfair competition.").

24      The only substantive difference between the original complaint and the FAC is

25 Plaintiff's suggestion that it lost money in the form of diminished *leases* in addition to lost

26 fares.  Specifically, Plaintiff alleges that some of its drivers chose not to renew their leases,

27 apparently preferring to drive for Uber, and that Plaintiff's lease revenue declined as a

28 result.  *Id.* ¶ 57.  *See also* FAC ¶ 53 (Plaintiff's "gross income in relevant part came from

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1041205.04/SF                    -4-

1  leasing its taxicabs to taxicab drivers…."). Plaintiff now contends that it "lost its vested

2  rights to the money that it had previously received from the lease payments of drivers who

3  picked up taxicab fares at one of the venues that had an exclusivity agreement with

4  [Plaintiff]." *Id.* ¶ 59.

5         3.    <u>UPA Allegations</u>

6       Plaintiff still fails to allege any facts regarding locality discrimination, or regarding

7  the cost of Uber's product or of doing business, as ordered by the Court. Order at 18-19.

8  Although the FAC invokes Cal. Bus. & Prof. Code § 17040, it contains no allegations

9  regarding locality discrimination. *See* FAC ¶ 67. And while Plaintiff does allege some

10 facts regarding Uber's pricing (FAC ¶ 67), the only concrete assertion it makes regarding

11 Uber's costs is that they were lower than Plaintiff's, and in some cases non-existent. FAC

12 ¶¶ 67, 69 (Uber "has kept [its] vehicles expenses … non-existent or negligible" and pays

13 "no regular employment benefits" to drivers). Further, Plaintiff concedes that it simply

14 does not know anything about Uber's actual costs, because Uber has kept those costs "a

15 well-guarded secret." *Id.* ¶ 69.

16      Plaintiff supplements these useless allegations with the vague and conclusory

17 assertion that Uber "has many other very large expenses," since it employs thousands of

18 people and must pay for, e.g., office space and advertising. *Id.* ¶ 69. It also offers

19 allegations designed to inflame rather than illuminate, based on various media reports, that

20 Uber "spends a far greater amount of money … than the average or typical business entity,

21 in order to find a way to avoid the payment of taxes, to operate so as to saturate, dominate,

22 and then take over the taxicab market, and to develop its product in a way that avoids

23 compliance with the law…." *Id.* Insofar as any factual allegation can be distilled from this

24 sentence, it appears to be that Uber makes investments to *minimize* its costs.

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF

-5-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

III.    **LEGAL ANALYSIS**

   A.    **Plaintiff's *De Facto* Taxi Claims Ask The Court To Interfere With The CPUC's Asserted Jurisdiction**

This Court determined that Plaintiff's claims in the FAC were barred by Cal. Pub. Util. Code § 1759(a), because "if the Court were to find for Plaintiff and conclude that Uber should be subject to the requirements applicable to regular taxis, that finding would 'hinder or interfere with a broad and continuing CPUC program.' "  Order at 11, citing *Rosen II*, 164 F. Supp. 3d at 1175.  The Court granted Plaintiff leave to amend only if it could allege facts that "would not hinder ongoing CPUC supervision and regulation." *Id.*

Plaintiff has failed entirely to address this Order.  Plaintiff has included no new facts of any substance suggesting how its "de facto taxi" allegations avoid CPUC jurisdiction.  Rather, Plaintiff continues to rely on the same allegations. *See, e.g.* FAC ¶ 58 (Uber "operate[s] de facto taxicabs … in direct competition to all of the authentic Orange County-based taxi companies"); ¶ 68 ("Uber continues to operate in Orange County and other parts of the State as a *de facto* taxi company, without compliance with any of the taxicab regulations and ordinances, including those established by the City of Anaheim and the County of Orange at the John Wayne Airport, setting its own prices rather than complying with the taxi pricing required by OCTAP….").

These allegations continue to run afoul of the three-part *Covalt* test established by the California Supreme Court to determine if a trial court lack lacks jurisdiction under § 1759(a).  Order at 9.  To recap:  The *Covalt* test asks "(1) whether the [CPUC] had the authority to adopt a regulatory policy on the subject matter of the litigation; (2) whether the [CPUC] had exercised that authority; and (3) whether action in the case before the court would hinder or interfere with the [CPUC's] ongoing exercise of regulatory authority." *San Diego Gas & Electric Co. v. Superior Court (Covalt)*, 13 Cal. 4th 893, 923-935.  When all three prongs of the test are met, the court must dismiss for lack of jurisdiction. *Covalt* at 923, 926, 935.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF                                                    -6-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1       As before, the first two *Covalt* prongs are clearly satisfied.  Order at 9.  Indeed,

2   Plaintiff still alleges the CPUC had authority to regulate TNCs, and exercised that

3   authority with respect to Uber.  *Id.*; FAC ¶¶ 2, 15, 35, 31-42.  The third prong is also

4   satisfied.  Although Plaintiff has removed a handful of allegations concerning "de facto

5   taxis" from its FAC, the "gravamen" of Plaintiff's UCL and UPA claims remains Uber's

6   alleged operation of "an unlicensed and unregulated taxi service."  Order at 10-11.

7   Consequently, as before, finding in Plaintiff's favor would *still* hinder or interfere with the

8   CPUC's authority in violation of § 1759(a) by concluding that Uber is a taxi service and

9   therefore subject to regulations other than those implemented by the CPUC.  *Id.* at 11.

10  This result would directly conflict with the CPUC's conclusion that Uber is *not* a taxi

11  service and therefore *not* subject to local taxi regulations.  CPUC Decision 13-09-045

12  (Exh. J to RJN ISO Uber's 2016 Motion to Dismiss Plaintiff's Complaint [Dkt. No. 18], at

13  23-25).  As such, the Court should dismiss Plaintiff's UCL and UPA claims without leave

14  to amend.

15      **B.**    **This Case Is An Improper Collateral Attack On The CPUC's Decisions**

16      Plaintiff's UCL and UPA claims fail for a second, equally powerful, reason.  Under

17  Cal. Pub. Util. Code § 1756(a), "[a] final decision of the [CPUC] is subject to review in

18  California only by a statutory writ of review in the Court of Appeal or Supreme Court."

19  8 Witkin, *Summ. of Cal. Law, Constitutional Law*, § 1108, p. 739 (10th ed. 2005); *Anchor*

20  *Lighting v. So. Cal. Edison Co.,* 142 Cal. App. 4th 541, 551-52 (2006) (dismissing UCL

21  claim against utility as an improper collateral attack because under section 1756(a)

22  plaintiff's sole means to challenge CPUC decision was petition for review to court of

23  appeal or Supreme Court).  Recognizing this rule, the Taxicab Paratransit Association of

24  California ("TPAC") filed petitions for writ in the Court of Appeal and the California

25  Supreme Court challenging the CPUC's determination that Uber and other companies are

26  not taxis or subject to taxi regulation.  Exhibits K, L to RJN ISO Uber's 2016 Motion to

27  Dismiss Plaintiff's Complaint [Dkt. No. 18]).  Both the Court of Appeal and the Supreme

28  Court denied those petitions.  Exhibits T, U to RJN ISO Uber's 2016 Motion to Dismiss

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF

-7-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1   Plaintiff's Complaint [Dkt. No. 18]).  The denial of TPAC's writ petitions was, under

2   California law, the final word on the issue.  Cal. Pub. Util. Code § 1756(a).

3        Plaintiff did not follow the lead of its trade association.  It did not challenge the

4   2013 Decision, the issuance of Rasier-CA's TNC permit, or Uber's settlements with the

5   CPUC.  Section 1756(a) precludes Plaintiff from attempting to attack these CPUC

6   decisions here.

7        **C.**    **Plaintiff Fails To Allege Facts Sufficient To State A Claim Under the**

8               **UCL or the UPA**

9        Even if Plaintiff's claims could survive Uber's jurisdictional challenges, they still

10  fail as a matter of law because Plaintiff still does not allege and cannot meet required

11  elements of the UCL and UPA claims it attempts to plead.

12       **1.**    **Plaintiff Has Failed To Allege A UCL Remedy**

13       This Court previously ruled that Plaintiff improperly sought non-restitutionary

14  disgorgement.  *Id.* at p. 18.  Plaintiff has done nothing to upset the Court's dismissal of its

15  UCL claim on this ground.  To the contrary, the FAC *explicitly* alleges "damages," which

16  are precluded by the UCL, and *still* fails to allege a plausible ownership interest in any

17  money collected by Uber.  Accordingly, Plaintiff's UCL claim again fails as a matter of

18  law.[1]

19       The UCL allows only injunctive relief and restitution; "damages cannot be

20  recovered."  *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1144 (2003).

21  To claim restitution, Plaintiff must "have an ownership interest in the money it seeks to

22  recover from" Uber.  *Id.* at 1149.  Such an interest might take the form of " 'earned wages

23  that are due and payable.' "  *Id.*, citing *Cortez v. Purolator Air Filtration Products Co.,* 23

24  Cal. 4th 163, 168 (2000).  As a matter of law, however, a plaintiff does not have an

25

26  ――――――――――――――

27  [1]   The Court also ruled that Plaintiff needed to allege its own detrimental reliance to state
   a claim under the FAL, or to state a UCL claim based on either fraudulent conduct or
   unlawful conduct predicated on the FAL.  Order at 15.  Plaintiff has now dropped its

28  FAL claim, and there are no references in its cause of action under the UCL to
   fraudulent conduct or misrepresentations.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1041205.04/SF              -8-

ownership interest in profits received by a perceived competitor from customers. *Id.* at 1151, quoting *MAI Systems Corp. v. UIPS*, 856 F. Supp. 538, 542 (N.D. Cal. 1994) (" '[c]ompensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims.' "). These sorts of interests are "contingent" and so constitute mere expectancies, not vested property interests. *Id.* at 1149.

Consequently, each court considering unfair competition claims by taxi companies and drivers against Uber has rejected those claims on the ground that the taxi company or driver could seek only damages, not restitution. *See, e.g., L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 859 (N.D. Cal. 2015) (Rejecting allegation of harm based on "customers [choice] to use Uber rather than taking a taxi" because "the complaint, as written, seeks only 'restitution and restitutionary disgorgement for all sums obtained in violation' of the California statutes; it does not allege an ownership interest in any of those profits or a 'confirmed' contractual relationship with any of Uber's customers" (citations omitted)); *Rosen II*, 164 F. Supp. 3d at 1178 (plaintiff had no claim for restitution where "Plaintiff has not alleged any vested interest in these profits, but only points to the possibility that Uber's customers would use his taxicab instead.").

Plaintiff initially sought to evade these results by alleging a "vested ownership interest" in certain Orange County taxi markets, and asserting that it was "damaged in the loss of money that it would have earned from fares, had [the Uber Defendants] not directly taken that money from passengers who would have taken a taxi ride with [Plaintiff] instead." Order at 17-18, citing Cmplt. ¶¶ 52, 56. The Court rejected those allegations, finding them analogous to the defective allegations in *L.A. Taxi*, 114 F. Supp. 3d at 859 that "customers [chose] to use Uber rather than taking a taxi," and in *Rosen II*, 164 F. Supp. 3d at 1178 that "[p]laintiff … only points to the possibility that Uber's customers would use his taxicab instead." Order at 17-18. Therefore, it concluded that as in those cases, Plaintiff failed to allege facts showing any ownership interest in taxi fares collected by Uber, and so could not show entitlement to restitution. *Id.* at 17.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1041205.04/SF                                    -9-

1    Despite the Court's Order, Plaintiff's defective allegations remain in the FAC.

2  Plaintiff still alleges "a vested property right to approximately twenty percent (20%) of the

3  earnings from Anaheim taxicab operations." FAC ¶ 52.  It also still alleges, albeit in

4  slightly different words, that "every fare that an UBER de facto taxi picked up … was a

5  fare that UBER took directly from A TAXI's drivers…." *Id.* ¶ 59.  *See also* ¶ 62 (Plaintiff

6  was "deprived of its vested earnings" because Uber took "that money from passengers who

7  would have taken a ride in an authentic A TAXI taxicab"; ¶ 63 (Uber took fares "that A

8  TAXI would have received instead of UBER, but for UBER's acts of unfair competition.").

9  This Court has already decided that Plaintiff's stolen taxi-fare allegations cannot form the

10  basis of a claim to restitution under the UCL.  Moreover, the FAC clarifies that Plaintiff

11  did not even collect fares and so could not possibly have had a vested interest in them;

12  instead, Plaintiff's revenue came in the form of lease payments from drivers.  FAC ¶ 57.

13  Thus, Plaintiff further undercuts its claim – already rejected once by the Court – that it

14  owns a property interest in *fares* collected by Uber drivers.

15    Besides these clunky attempts to plead around the UCL's damages bar, the only

16  difference between the FAC and the original complaint is Plaintiff's new suggestion that it

17  lost money in the form of diminished *lease* revenue.  FAC ¶ 59 ("UBER unfairly competed

18  directly with A TAXI's drivers of authentic taxicabs for the same profits that A TAXI

19  would otherwise have obtained (through its drivers' lease payments") … all to A TAXI's

20  direct damage as alleged herein"); *id.* ("each time UBER's wrongful acts alleged herein

21  culminated in one or more of A TAXI's authentic taxicabs being taken out of the fleet

22  since it was not or could not be leased to an A TAXI driver, represented UBER's direct

23  taking of income of $545 to A TAXI per week.").  To be clear, Plaintiff does not allege

24  that lease *rates* decreased.  FAC ¶ 57.  Rather, it alleges that from 2013 to early 2016, its

25  drivers "began to discontinue leasing" due to perceived competition with Uber, and in

26  some cases began driving for Uber instead.  *Id.*  As a result, it had far fewer leases by 2016

27  than it had in 2013, and so was generating less revenue.  *Id.*

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF                                           -10-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1    This distinction only weakens Plaintiff's case.  Indeed, Plaintiff has no better basis

2    to claim a "vested property interest" in lease agreements than in fares.  Just as customers

3    had every right to choose whether to take a taxi or an Uber, or some other form of

4    transport, Plaintiff's former lessees had every right to choose whether or not to renew their

5    leases, to pursue some other line of work, or to simply retire.  This is precisely the sort of

6    contingency noted in *Korea Supply*.  As the Court made clear in that case, contingent

7    interests are, by definition, not vested property interests.

8    Moreover, just as Plaintiff cannot allege that Uber drivers took specific, identified

9    ride requests in which Plaintiff had a prior, established property interest, Plaintiff does not

10   and cannot allege that Uber actually took over any particular leases.  To the contrary, it is

11   common knowledge that Uber's business model does not involve leases.  Thus, even if

12   Plaintiff had a vested interest in lease payments – which it did not – it cannot possibly

13   allege that Uber *took* those lease payments, as it must to allege entitlement to restitution

14   under the UCL.  In short, whether Plaintiff asserts a vested interest in fares or in lease

15   payments, or both, it improperly seeks to recover "compensation for a lost business

16   opportunity," which "is a measure of damages and not restitution."  *Korea Supply*, 29 Cal.

17   4th at 1151.

18   Time and again courts – including this one – have rejected claims of

19   misappropriation of market share on the grounds that they seek damages, not restitution.

20   *Korea Supply Co.,* 29 Cal. 4th at 1151; *SkinMedica, Inc. v. Histogen Inc.,* 869 F. Supp. 2d

21   1176, 1185-86 (S.D. Cal. 2012) (plaintiff's "lost property" caused by defendant unfairly

22   "earn[ing] the sales that [plaintiff] would have made" did not constitute restitution);

23   *Rosen II*, 164 F. Supp. 3d at 1178 ("the possibility that Uber's customers would use

24   [Plaintiff's] taxicab instead" does not amount to an allegation of a vested interest in Uber's

25   profits).  As this Court explained in its Order, restitution is available only where the

26   "money or property identified as belonging in good conscience to the plaintiff could

27   clearly be traced to particular funds or property in the defendant's possession.").  Order at

28   17, citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 699 (2006).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF                                        -11-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1   Plaintiff wholly fails to explain how any money or property earned by Uber "belong[s]" to

2   Plaintiff or can "clearly be traced" to any money or property in Uber's possession.  To the

3   contrary, Plaintiff continues to explicitly allege "damages."  *See, e.g.*, FAC ¶¶ 56, 59.

4   Plaintiff's "vested property interest" label thus still does not save its claim.

5           **2.**        **Plaintiff Fails To State A Claim Under The Unfair Practices Act**

6                     **(UPA)**

7                   (a)    <u>Plaintiff Fails to Show that its UPA Claim is Not Barred by</u>

8                            <u>§ 17024's Exclusion of Claims Against Public Utilities Subject</u>

9                            <u>to CPUC Jurisdiction</u>

10       Plaintiff, but not Uber, has taken the position that Uber is subject to CPUC

11   jurisdiction – that is the basis for Plaintiff's claim for Declaratory Relief against the CPUC

12   and its Commissioners.  Given that allegation, Plaintiff's claim against Uber is precluded

13   by the statutory exemption for public utilities contained in Cal. Bus. & Prof. Code

14   § 17024.  That section provides that the UPA does not apply "to any service, article or

15   product for which rates are established under the jurisdiction of the Public Utilities

16   Commission of this State and sold or furnished by any public utility corporation...."  *Id.* at

17   § 17024(1).  Courts have broadly interpreted this exemption to apply whenever the CPUC

18   has the *jurisdiction* to establish or set rates, even if it does not in fact do so.  *Hladek v. City*

19   *of Merced*, 69 Cal. App. 3d 585, 590 (1977) ("the pivotal issue is whether the Public

20   Utilities Commission would have the jurisdiction to establish the rates for such service if it

21   had been sold or furnished by a privately owned public utility.").  Although *Hladek*

22   analyzed the companion exclusion to the UPA, § 17024(2), which exempts publicly owned

23   rather than privately owned public utilities, its conclusion is equally applicable here.  *See,*

24   *e.g.*, Cal. Antitrust and Unfair Competition Law, 2015 Revised Edition § 18.03[C] ("UPA

25   expressly excludes ... services ... of privately owned public utilities the rates for which are

26   within the jurisdiction of the [CPUC]."

27       Plaintiff alleges the CPUC's purpose is "to license, regulate, and enforce matters

28   involving public utilities, including but not limited to, certain aspects of public

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF                                   -12-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1    transportation." FAC ¶ 15.  The FAC also alleges that the CPUC has assumed the

2    regulation of Rasier-CA, LLC and other TNCs.[2]  *Id.* ¶ 2.  Indeed, Plaintiff challenges the

3    CPUC's right to regulate Uber in this very lawsuit, thereby taking the position that the

4    CPUC has jurisdiction over Uber, and that Uber is a public utility.  *See also* Cal. Const.,

5    Art. XII, § 3 ("[p]rivate corporations and persons that own, operate, control, or manage a

6    … system for the transportation of people … are public utilities subject to control by the

7    Legislature"); Cal. Const., Art. XII, § 6 (The CPUC "may fix rates … for all public utilities

8    subject to its jurisdiction.").

9           Under its own allegations, Plaintiff cannot satisfy its burden to affirmatively allege

10   facts establishing that the statutory UPA exemption contained in Section 17024 does not

11   apply to Uber.  *Hladek*, 69 Cal. App. 3d at 591 ("Such allegations are essential in order to

12   hold that the Public Utilities Commission would not have had *jurisdiction to set rates* for

13   respondent's transportation service…." (emphasis added).  For this reason alone, Plaintiff's

14   UPA claim fails.

15                     (b)     Plaintiff Fails to State a UPA Claim

16          This Court previously dismissed Plaintiff's UPA cause of action because Plaintiff

17   failed to allege locality discrimination, or "facts regarding the Uber Defendants' prices, the

18   costs of their product, or their costs of doing business."  Order at 18-19.  Plaintiff *still* does

19   not even attempt to allege locality discrimination, so the Court need not dwell further on

20   that issue.

21          As to Plaintiff's supposed predatory pricing claim, the UPA provides that it is

22   unlawful "to sell any article or product at less than the cost thereof to such vendor, or to

23   give away any article or product, for the purpose of injuring competitors or destroying

24   competition."  Cal. Bus. & Prof. Code § 17043.  "[T]o satisfy the pleading requirements of

25   section 17043, the plaintiff must allege defendant's sales price, its cost in the product and

26

27   _____

28   [2]   Although Plaintiff's FAC and this motion refer to defendants, collectively, as "Uber,"
         Rasier-CA, LLC is the only entity involved in this action that holds a TNC permit.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF                                                            -13-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1   its cost of doing business.  And the various costs *must* be stated in other than

2   conclusionary terms."  *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 275 (1983), emphasis

3   added.  Despite the Court's Order, Plaintiff still fails to meet these requirements.  Although

4   it now provides some allegations regarding Uber's pricing (FAC ¶ 67), the FAC remains

5   devoid of facts showing the cost of Uber's products and the cost of doing business.

6   *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2013 U.S. Dist. LEXIS 89208, *46

7   (N.D. Cal. June 25, 2013) (dismissing UPA claims omitting "basic elements" of relevant

8   costs, but that "merely allege[] that [defendant's] capitated rate contracts [were] provided at

9   'below cost.' ").

10         The *only* concrete allegations Plaintiff makes regarding Uber's costs are

11   concessions that Uber's "vehicle expenses [are] non-existent or negligible," and that Uber

12   does not pay any "regular employment benefits" to drivers.  FAC ¶ 69.  These allegations

13   cannot possibly support a UPA claim alleging that Uber priced its services below its costs.

14   Plaintiff's real objection here appears to be, as before, that Defendants priced their services

15   below *Plaintiff's* costs.  *See, e.g.*, FAC ¶¶ 66-67 (Plaintiff and other taxi companies "have

16   significant operating, licensing, regulatory, and commercial auto liability insurance

17   premiums expenses" which Uber does not have).  But the UPA requires Plaintiff to show

18   that Uber prices its services at below its *own* costs, not below the price Plaintiff must

19   charge due to requirements by the taxi industry.

20         The best Plaintiff can do to satisfy that requirement is to allege vaguely that "UBER

21   has many other very large expenses."  FAC ¶ 69.  For instance, Plaintiff alleges that Uber

22   employs roughly 7,000 people, and pays rent, insurance premiums, utility bills, and

23   advertising and lobbying costs.  *Id.*  It adds, in conclusory fashion, that these costs "far

24   exceeded its receipts from its *de facto* taxicab operations."  *Id.*  Plaintiff also quotes

25   unsubstantiated media reports indicating that Uber pays money to experts to help minimize

26   its tax bills, that Uber often settles lawsuits rather than litigating them through trial, and

27   that Uber developed software so that it could offer its service more widely.  *Id.*

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF

-14-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1   These grab-bag allegations do not begin to cure the defects identified by the Court.

2   If this were enough to satisfy the pleading requirements under the UPA, then any

3   perceived "competitor" could cobble inflammatory media reports into a complaint, allege

4   "below-cost pricing," and on that basis alone abuse the UPA to conduct a fishing

5   expedition into the operations and finances of their competitors.  The problem would be

6   particularly acute for innovative startup and technology companies, who routinely operate

7   at a loss in their early years as they seek to expand their visibility and market share, and

8   often, simply survive.  In short, Plaintiff simply "makes no attempt to allege [Uber's] …

9   costs, or cost of doing business," and its UPA claim fails as a matter of law.

10   *Rheumatology*, 2013 U.S. Dist. LEXIS at * 46.

11   **IV.   THE COURT SHOULD DENY LEAVE TO AMEND**

12   Courts routinely and properly deny leave to amend when the plaintiff cannot amend

13   to cure the defects in his or her case.  *See, e.g.*, *Cooney v. Cal. P.U.C.*, 2014 U.S. Dist.

14   LEXIS 165780 (N.D. Cal. 2014).  As the *L.A. Taxi and Rosen II* results make clear, as well

15   as Plaintiff's failed amendments, Plaintiff cannot amend to cure the jurisdictional defects

16   defeating its UCL and UPA claims, nor can it plead around the remedy failings of its UCL

17   claim or the flaws of its UPA claim.  Under these circumstances, dismissal of those claims

18   without leave to amend is entirely appropriate.

19   **V.   CONCLUSION**

20   Plaintiff has done nothing of substance to address the basic defects this Court

21   identified in its original Complaint.  Plaintiff has included some new allegations, but those

22   allegations do not change the basic facts:  Plaintiff's "de facto taxi" claims invade the

23   CPUC's exclusive jurisdiction; Plaintiff asks for damages, not restitution; and Plaintiff

24   does not come close to alleging facts about Uber's pricing or costs sufficient to state a UPA

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF                                                                -15-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss

1  claim.  The Court should dismiss all claims against Uber in the FAC, save the Lanham Act

2  claim, this time without leave to amend.

3

4  Dated:  May 24, 2017                          ALLEN MATKINS LECK GAMBLE
                                                 MALLORY & NATSIS LLP
5

6                                        By:         /s/ Marshall C. Wallace

7                                                MARSHALL C. WALLACE
                                                 Attorneys for Defendants UBER
                                                 TECHNOLOGIES, INC.; RASIER, LLC;
8                                                RASIER-CA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1041205.04/SF                                    -16-

Memorandum of Points & Authorities in support
of Uber Defendants' Motion to Dismiss