AROCLES AGUILAR (SBN 94753)
HARVEY Y. MORRIS (SBN 87902)
MITCHELL SHAPSON (SBN 127860)
POUNEH GHAFFARIAN (SBN 142779)
JONATHAN C. KOLTZ (SBN 268793)
California Public Utilities Commission
505 Van Ness Avenue
San Francisco, CA 94102
Telephone:     (415) 703-2760
Facsimile:     (415) 703-2262
Email:         jk5@cpuc.ca.gov

*Attorneys for Defendants California Public
Utilities Commission, and Michael Picker,
Carla J. Peterman, Liane M. Randolph,
Clifford Rechtschaffen, and Martha Guzman Aceves,
in their official capacities as Commissioners
of the Public Utilities Commission of the State of California*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| A WHITE AND YELLOW CAB, INC., <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC., et al., <br><br> Defendants. | **Case No.:** 4:15-cv-05163-JSW <br><br> **CPUC DEFENDANTS' NOTICE OF MOTION; MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (Rules 12(b)(1) and 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:          August 11, 2017 <br> Time:          9:00 a.m. <br> Courtroom:   5, 2nd Floor <br> Judge:         Hon. Jeffrey S. White |

1

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2 **TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

3 **PLEASE TAKE NOTICE** that on August 11, 2017, at 9:00 a.m., or as soon thereafter as

4 counsel may be heard by the above-entitled Court, located in Courtroom 5, 2nd Floor, Federal

5 Courthouse, at 1301 Clay Street, Oakland, California, before the Honorable Jeffrey S. White,

6 Defendants California Public Utilities Commission ("CPUC"), and Defendants Michael Picker,

7 Carla J. Peterman, Liane M. Randolph, Clifford Rechtschaffen, and Martha Guzman Aceves, in

8 their official capacities as CPUC Commissioners (collectively, "the CPUC Defendants"), will

9 move and do move this Court under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

10 Procedure for an order dismissing in part the First Amended Complaint ("FAC") of Plaintiff, A

11 White and Yellow Cab, Inc. ("White and Yellow").  The CPUC Defendants ask the Court to

12 dismiss the FAC's fourth cause of action without leave to amend, and to dismiss the CPUC

13 Defendants from the action.

14        The Motion is based on this Notice, the Memorandum of Points and Authorities, the oral

15 argument of counsel, and any other information that may come before the Court when hearing

16 this matter.

17 ///

18 ///

19 ///

20

21

22

23

24

25

26

27

28

## SUMMARY OF ARGUMENT

The CPUC has promulgated regulations to govern Transportation Network Companies ("TNCs") like Uber and Lyft.  White and Yellow, a now-defunct "traditional" taxicab company, says that the TNC regulations are less stringent than the regulations governing taxicabs.  It claims that the differences between the two sets of rules violate its equal protection and substantive due process rights.  And it asks this Court to declare the TNC regulations unconstitutional.

White and Yellow's claims against the CPUC Defendants are non-justiciable.  White and Yellow does not seek injunctive relief, and a declaratory order, by itself, would not redress White and Yellow's injuries.  White and Yellow thus lacks standing.  *Mayfield v. United States*, 599 F.3d 964, 972-73 (9th Cir. 2010).  Furthermore, after filing suit, White and Yellow went out of business and shouldered a $230,000 judgment lien.  There is no reasonable likelihood that it will reopen, so no reasonable likelihood that the TNC regulations could ever again affect it.  Even assuming declaratory relief could once have redressed its injuries, that is no longer true.  This case is moot.  *City News and Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 283 (2001).

Even were White and Yellow's claims justiciable, they would fail on the merits.  The uniform weight of authority holds that government agencies have rational bases for distinguishing between TNCs and taxicabs.  *See, e.g.*, *Miadeco Corp. v. Miami-Dade County*, __ F.Supp.3d __, __, 2017 WL 1319576, at *4 (S.D. Fla. Apr. 10, 2017) (collecting cases).  That destroys both White and Yellow's equal protection and substantive due process claims.  *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (equal protection) *and Washington v. Glucksberg*, 521 U.S. 702, 722 (1997) (due process).

Finally, White and Yellow has, once again, sued the CPUC as an entity.  In the CPUC Defendants' last motion to dismiss, we argued that the CPUC-as-entity was immune from suit under the Eleventh Amendment (Dkt. No. 21, at 10:9-23), and the Court granted that part of the motion without leave to amend.  (Dkt. No. 63, at 10:19-22).  The CPUC must be dismissed from the case.

# **TABLE OF CONTENTS**

Pages

**NOTICE OF MOTION AND MOTION TO DISMISS** ..................................................i

**SUMMARY OF ARGUMENT** ....................................................................................ii

TABLE OF CONTENTS ................................................................................................iii

TABLE OF AUTHORITIES ..........................................................................................iv

**MEMORANDUM OF POINTS AND AUTHORITIES** ..............................................1

**Background** ................................................................................................................1

**Argument** ...................................................................................................................3

**I. Standards of Review** ..............................................................................................3

**II. Both because White and Yellow lacks standing and because the case is moot, this Court lacks Article III jurisdiction.** ..............................................................4

    A.    Because a standalone declaratory order from the Court would not actually redress its injuries, White and Yellow lacks standing. ..........................................4

    B.    Because White and Yellow is out of business and pleads no facts showing that it is likely to reopen, its claims are moot. ....................................................................7

**III. Because the CPUC had at least one rational basis for distinguishing between TNCs and taxicabs, White and Yellow's equal protection and substantive due process claims fail.** ..........................................................................................9

    A.    Federal courts across the country have recognized that the government may distinguish between TNCs and  taxicabs without violating the Equal Protection Clause. ....................................................................................................................9

    B.    The existence of a rational basis also destroys White and Yellow's substantive due process claim. ..............................................................................................12

**IV. As the Court already ordered, the CPUC-as-entity must be dismissed from the case.** ...14

**V. Because amendment would be futile, White and Yellow's claims against the CPUC Defendants should be dismissed with prejudice.** ..............................................14

**Conclusion** ................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                   <u>Pages</u>

*Am. Mfrs. Mut. Inc. Co. v. Sullivan,* 526 U.S. 40 (1999)..................................................12

*Arizona Students' Ass'n. v. Arizona Bd. Of Regents,* 824 F.3d 858 (9th Cir. 2016) .........14

*ASARCO, Inc. v. Kadish,* 490 U.S. 605 (1989).................................................................6

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...........................................................................4

*Associated Gen. Contractors of Cal, Inc. v. Cal. State Council of Carpenters, 4
459 U.S. (1983)*.............................................................................................................4

*Boston Taxi Owners Ass'n v. Baker*, __ F.Supp.3d __, 2017 WL 354010
(D. Mass. Jan. 24, 2017) ...............................................................................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................4

*Board of License Comm'rs of the Town of Tiverton v. Pastore,* 469 U.S. 238 (1985)........8

*Bond v. U.S.,* 564 U.S. 211 (2011).................................................................................13

*Chapman v. Sheridan-Wyoming Coal Co.,* 338 U.S. 621 (1950) ....................................13

*City of New Orleans v. Dukes,* 427 U.S. 297 (1976) .......................................................10

*City News and Novelty, Inc. v. City of Waukesha*, 531 U.S. 278 (2001) .................... ii, 8, 9

*City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432 (1985)....................................9,10

*Clark v. City of Lakewood,* 259 F.3d 996 (9th Cir. 2001) .................................................8

*Clinton v. City of New York,* 524 U.S. 417 (1998)............................................................5

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,
527 U.S. 666 (1999)*......................................................................................................13

*Collins v. City of Harker Heights,* 503 U.S. 115 (1992)...................................................12

*Country Classic Dairies, Inc. v. State of Montana, Dept. of Commerce Milk Bureau,
847 F.2d 593 (9th Cir. 1988)* .........................................................................................10

*Cousins v. Lockyer,* 568 F.3d 1063 (9th Cir. 2009)..........................................................4

*Daniels v. Williams,* 474 U.S. 327 (1986) ......................................................................12

*Desoto Cab. Co., Inc. v. Picker*, __ F.Supp.3d __, 2017 WL 118810
(N.D. Cal. Jan. 12, 2017) ..........................................................................................10, 11

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993) .................................................. ii, 10

*Feldman v. Bomar,* 518 F.3d 637 (9th Cir. 2008)..........................................................8, 9

*Friends of the Earth, Inc v. Laidlaw Envt'l Servs. (TOC) Inc.,* 528 U.S. 167 (2000) ........ 7

*Gebresalassie v. District of Columbia*, 170 F.Supp.3d 52 (D.D.C. 2016) .......................11

*Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS Inc.*,
465 F.3d 112 (9th Cir 2006) ...........................................................................................6

*Illinois Transp. Trade Ass'n v. City of Chicago*, 839 F.3d 594
(7th Cir. 2016)..........................................................................................10, 11, 12, 13

*Indep. Training and Apprenticeship Program v. Cal. Dep't of Indus. Rel.*,
730 F.3d 1024 (9th Cir. 2013) ......................................................................................13

*Joe Sanfelippo Cabs Inc. v. City of Milwaukee,* 46 F.Supp.3d 888 (E.D. Wis. 2014).......11

*Kahawaiolaa v. Norton,* 386 F.3d 1271 (9th Cir. 2004)....................................................10

*Kim v. United States,* 121 F.3d 1269 (9th Cir. 1997).........................................................13

*Lacano Invs., LLC v. Balash,* 765 F.3d 1068 (9th Cir. 2014).............................................3

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) .....................................................4, 5

*Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010)........................................... ii, 5, 6

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)................................................5

*Melrose Credit Union v. City of New York*, __ F.Supp.3d __, 2017 WL 1200902
(S.D.N.Y. Mar. 30, 2017) .............................................................................................11

*Miadeco Corp. v. Miami-Dade County*, __F.Supp.3d __, 2017 WL 1319576
(S.D. Fla. Apr. 10, 2017) ......................................................................................... ii, 11

*Newark Cab Ass'n v. City of Newark*, __ F.Supp.3d __, 2017 WL 214075
(D.N.J. Jan. 18, 2017) ..................................................................................................11

*Parks Sch. Of Bus v. Symington,* 51 F.3d 1480 (9th Cir. 1995)..........................................3

*Plyler v. Doe,* 457 U.S. 202 (1982)...................................................................................9

*Safe Air for Everyone v. Meyer,* 373 F.3d 1035 (9th Cir. 2004).........................................3

*Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115 (1974)...................................................8

*Tennessee Elec. Power Co. v. TVA,* 306 U.S. 118 (1939) ................................................13

*Thornton v. City of St. Helens,* 425 F.3d 1158 (9th Cir. 2005)........................................10

*U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388 (1980) ....................................................7

*United States v. Juvenile Male,* 670 F.3d 1999 (9th Cir. 2012).......................................13

*VTS Transp., Inc. v. Palm Beach County*, __ F.Supp.3d __, 2017 WL 1042331
(S.D. Fla. Mar. 8, 2017)...........................................................................................11, 12

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ....................................................... ii, 13

*Weber v. Dep't of Veterans Affairs,* 521 F.3d 1061 (9th Cir. 2008)..................................4

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)...........................................................................3

*Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483 (1955)..................................13


**CPUC Decisions**

*In re Cecenas,* 59 CPUC 2d 643 (1995), 1995 WL 334412..................................................2


**United States Constitution**

Article I, § 7 ........................................................................................................................5

Article III, § 2 .....................................................................................................................4

Fourteenth Amendment ....................................................................................................12


**California Constitution, Article XII**

§ 3...........................................................................................................................................1

§ 4...........................................................................................................................................1

§ 6...........................................................................................................................................1

§ 8...........................................................................................................................................2


**California Government Code**

§ 53075.5................................................................................................................................2


**California Public Utilities Code**

§ 451.......................................................................................................................................1

§ 701.......................................................................................................................................1

§ 5360.....................................................................................................................................1

§ 5360.5..................................................................................................................................1

§ 5378(a)(1) ...........................................................................................................................1

§ 5381.5..................................................................................................................................1

§ 5431(a) ................................................................................................................................1

§ 5433.................................................................................................................2

§ 5440(a)...........................................................................................................1

§ 5353(g)............................................................................................................2

**Federal Rules of Civil Procedure**

12(b)(1) ......................................................................................................... i, 3

12(b)(6) ......................................................................................................... i, 3

15(a)(2) ...........................................................................................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

### Background

The CPUC is a California agency, organized under the state's Constitution and Public Utilities Code, with the power to regulate most in-state utilities. Cal. Const., Art. XII, §§ 3, 6; Cal. Pub. Util. Code §§ 451, 701. It has the specific constitutional authority to "fix rates and establish rules for the transportation of passengers . . . by transportation companies." Cal. Const., Art. XII, § 4.

Charter-party carriers are a kind of transportation company regulated by the CPUC. With some exceptions, "'charter-party carrier of passengers' means every person engaged in the transportation of persons by motor vehicle for compensation, whether in common or contract carriage, over any public highway in this state." Cal. Pub. Util. Code § 5360. Charter-party carriers must "operate on a prearranged basis", which "means that the transportation of the prospective passenger was arranged with the carrier by the passenger, or a representative of the passenger, either by written contract or telephone." Cal. Pub. Util. Code § 5360.5. They must carry a paper or electronic waybill demonstrating prearrangement, Cal. Pub. Util. Code § 5381.5, and the CPUC may revoke a charter-party carrier's permit for failing to comply with the prearrangement or waybill requirements. Cal. Pub. Util. Code § 5378(a)(1).

TNCs are a subset of charter-party carriers, and thus also subject to the CPUC's regulation. *See* Cal. Pub. Util. Code § 5440(a) ("The commission has initiated regulation of transportation network companies as a new category of charter-party carriers and continues to develop appropriate regulations for this new service."). A TNC is "an organization . . . that provides prearranged transportation services for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle." Cal. Pub. Util. Code § 5431(a).

The CPUC has promulgated TNC regulations in an ongoing rulemaking proceeding, R.12-12-011.[1]  The rules dictate, for example, how much insurance TNC drivers should carry, how to prove that they're carrying it, how they display their livery, and how often they must have their cars inspected.  Since their enactment, some of these rules have been supplemented or supplanted by statute.  *See*, *e.g.*, Cal. Pub. Util. Code § 5433 (insurance coverage).

Taxicabs would seem to fall under the Public Utilities Code's definition of charter-party carriers and under the CPUC's broader constitutional authority over transportation companies.  But the California Constitution exempts from the CPUC's jurisdiction those matters that were historically subject to local, rather than statewide, control.  Cal. Const., Art. XII, § 8.  This includes the provision of taxicab service.  *See In re Cecenas*, 59 CPUC 2d 643, 644-45 (1995), 1995 WL 334412 ("There is a traditional division of responsibility between state and local government under which taxicab regulation is a local function.") (internal quotation marks omitted).  So the CPUC may not regulate "[t]axicab transportation service licensed and regulated by a city or county, by ordinance or resolution, rendered in vehicles designated for carrying not more than eight persons including the driver."  Cal. Pub. Util. Code § 5353(g); *see also* Cal. Gov. Code § 53075.5 (directing cities and counties to regulate taxicabs).

The key distinction between charter-party carriers (including TNCs) and taxicabs is that while charter-party carriers *must* prearrange their rides, taxicabs *may* prearrange, but need not.  Instead, taxicabs may take street hails, where no arrangement between driver and passenger is made until the passenger actually steps into the car.  *See* FAC, Dkt. 65, at 13:26-28 (quoting an official CPUC publication: "Taxis may provide transportation 'at the curb', that is, a customer may 'arrange' taxi transportation by simply hailing a cab from the sidewalk.").  So taxicab companies could apply to become charter-party carriers subject to the CPUC's regulation—they otherwise fit the bill—but that would mean relinquishing the right to take street hails.

---

[1] The CPUC's official docket for the proceeding is available at:
https://apps.cpuc.ca.gov/apex/f?p=401:56:0::NO:RP,57,RIR:P5_PROCEEDING_SELECT:R1212011.

1   White and Yellow is a California corporation that used to operate taxicabs.  On April 4,

2   2016, after filing the original complaint in this case but before filing the operative FAC, White

3   and Yellow went out of business.  FAC, Dkt. 65, at 3:27-28.  White and Yellow is also

4   burdened with a $230,000 judgment lien from an unrelated state case, which it would have to

5   satisfy before it could reopen.  Notice of Lien, Dkt. 53.

6   **Argument**

7   The CPUC Defendants ask the Court to dismiss White and Yellow's fourth cause of

8   action for two reasons.  First, White and Yellow's claims are non-justiciable on standing and

9   mootness grounds.  "Because standing and mootness both pertain to a federal court's subject-

10  matter jurisdiction under Article III, they are properly raised in a motion to dismiss under

11  Federal Rule of Civil Procedure 12(b)(1) . . . ."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

12  2000).  (There is also, lingering from the original complaint, an Eleventh Amendment issue:

13  despite the Court's prior ruling (Dkt. 63), White and Yellow persists in naming the CPUC-as-

14  entity as a defendant.  That issue, too, is jurisdictional.)  Second, assuming this Court has

15  jurisdiction over White and Yellow's claims against the CPUC Defendants, White and Yellow

16  has not stated a facially plausible claim for relief.  Challenges to the legal sufficiency of a

17  complaint fall under Rule 12(b)(6).  *See Parks Sch. Of Bus. v. Symington*, 51 F.3d 1480, 1484

18  (9th Cir. 1995).

19          **I.        Standards of Review**

20  Jurisdictional attacks under Rule 12(b)(1) can be facial or factual.  *White v. Lee*, 227

21  F.3d at 1242.  In a facial attack like this one, "the challenger asserts that the allegations

22  contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air*

23  *for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Because this is a facial attack, in

24  weighing the jurisdictional questions, the Court must accept all of the factual allegations in the

25  complaint as true.  *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014).  The

26  Court need not, however, accept as true the complaint's legal conclusions, even if they are cast

27  as factual allegations.  *Ibid.*  And it is inappropriate to assume that a plaintiff "can prove facts

28

that it has not alleged . . . ." *Associated Gen. Contractors of Cal, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Likewise, in considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal . . . ." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (internal quotation marks omitted). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim of relief that is plausible on its face.'" *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 556.

## II.   Both because White and Yellow lacks standing and because the case is moot, this Court lacks Article III jurisdiction.

### A.   Because a standalone declaratory order from the Court would not actually redress its injuries, White and Yellow lacks standing.

The Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. Standing—the plaintiff's personal stake in its claim, sufficient to create a true case or controversy—is an indispensable part of that claim, without which the courts lack jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing has three elements: injury in fact, causation, and redressability. *Id.* at 560-61. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

White and Yellow states that the CPUC's TNC regulations are less stringent (and, therefore, less costly to comply with) than the regulations governing taxicabs. *See* FAC, Dkt. 65, 49:1-8. This allegedly gave TNCs an unfair leg up over taxicabs, allowing TNCs to take White and Yellow's customers and drivers, and ultimately to force it out of business. *See id.* at 22:28 (alleging that TNCs "began stealing [White and Yellow's] fares); *id* at 23:8-11 (alleging that White and Yellow's drivers began driving for TNCs); *id.* at 23:23-28 (alleging that the loss

1   of customers and drivers forced White and Yellow out of business).  White and Yellow asserts

2   that the differences between the two sets of rules violate its Fourteenth Amendment equal

3   protection and substantive due process rights.  *See id.* at 48:25 through 50:8.  The CPUC

4   Defendants assume for the sake of argument that White and Yellow has adequately pleaded

5   injury and causation by asserting that the TNC regulations had an effect, albeit an indirect one,

6   on its bottom line.  We contend, however, that White and Yellow has not established the third

7   element of standing: redressability.

8          A plaintiff must show that it is "likely, as opposed to merely speculative, that the injury

9   will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (internal quotation marks

10  omitted); *see also Mayfield*, 599 F.3d at 971 (explaining that the plaintiff must show a

11  "substantial likelihood" of redressability).  The only relief White and Yellow seeks is an order

12  declaring that the current TNC regulations are unconstitutional.  FAC, Dkt. 65, at 51:1-5.  A

13  standalone declaratory order can redress a petitioner's injury only when nothing further is

14  required to make the petitioner whole.

15         For example, in *MedImmune, Inc. v. Genentech, Inc.*, a patent fight between two drug

16  companies, Genentech had demanded that MedImmune pay royalties on the sale of one of

17  MedImmune's drugs.  549 U.S. 118, 121 (2007).  MedImmune sought an order declaring that it

18  need not pay because Genentech's patent was invalid, and because the patent did not cover the

19  drug in any event.  *Id.* at 124.  That was enough to create a justiciable case or controversy.  *Id.*

20  at 137.  The issue was binary—either MedImmune owed royalties or not—and either way

21  declaratory relief would completely resolve the issue.

22         Similarly, in *Clinton v. City of New York*, President Clinton had used the line-item veto

23  to cancel portions of two laws.  524 U.S. 417, 421 (1998).  The petitioners wanted the cancelled

24  portions reinstated, and sought an order declaring that the line-item veto violated the

25  Constitution's Presentment Clause.  *Id.* at 425, fn. 9.  The Supreme Court held that the

26  petitioners had standing to seek declaratory relief.  *Id.* at 429.  Again, the choice was binary:

27  either the line-item veto was constitutional, in which case the canceled portions would stay

28

1  canceled, or it wasn't, in which case those portions would be reinstated.  And again, either way,

2  nothing further was required to settle the question.

3  In contrast, declaratory relief cannot, by itself, redress a plaintiff's injuries where "any

4  prospective benefits depend on an independent actor who retains 'broad and legitimate

5  discretion the courts cannot presume either to control or predict.'"  *Glanton ex rel. ALCOA*

6  *Prescription Drug Plan v. Advance PCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (quoting

7  *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).  That was the case in *Mayfield*, where, as

8  here, the petitioner voluntarily limited himself to declaratory relief, which then proved fatal to

9  his claim.

10  The FBI had suspected Mayfield of committing the 2004 Madrid train bombings.

11  *Mayfield*, 599 F.3d at 966.  Agents surveilled Mayfield, searched his home and office, and

12  seized evidence.  *Id.* at 967.  After Mayfield was exonerated, he sued the government seeking,

13  among other things, an injunction requiring the agents to return the evidence they had seized

14  and to destroy some surveillance materials.  *Id.* at 967-968.  The parties settled the bulk of the

15  claims.  *Id.* at 968.  All that remained, under the settlement, was Mayfield's ability to seek an

16  order declaring that the government had violated his Fourth Amendment rights.  *Ibid.*

17  According to the Ninth Circuit, that was not enough to convey standing.  Even if

18  Mayfield got declaratory relief, the government would be under no compulsion to return the

19  evidence it had seized or to destroy the surveillance materials.  *Id.* at 972.  Rather, "the only

20  relief that would redress [the] alleged Fourth Amendment violation is an injunction requiring

21  the government to return or destroy such materials"—but Mayfield had bargained that remedy

22  away.  *Ibid.*  So Mayfield lacked standing and the court lacked jurisdiction.  *Id.* at 973.

23  Just as in *Mayfield*, the only remedy that could redress White and Yellow's purported

24  injuries would be an injunction.  Assume the Court declares the TNC regulations

25  unconstitutional.  What then?  The CPUC could issue new regulations, but without any

26  guidance from the Court there is no guarantee that the new rules would leave White and Yellow

27  any better off.  Or the CPUC could stand pat, leaving TNCs largely unregulated, which would

28  certainly be worse for White and Yellow.  Its relief would depend on the CPUC changing the

TNC regulations in ways favorable to White and Yellow, but absent any requirement that the CPUC actually do so. And even if the regulations changed, the TNCs would then have to respond to that change by fleeing the Orange County transportation market, which seems unlikely. In short, White and Yellow asks for a remedy that is no remedy at all.

Because White and Yellow has not established that the relief it seeks would redress its injuries, it lacks standing and this Court lacks jurisdiction. Indeed, likely recognizing this, White and Yellow sought an injunction in its original complaint. (White and Yellow also originally sought damages against the CPUC Defendants, which the Court properly disallowed. (Dkt. 63).) But after the Court questioned whether White and Yellow had pleaded facts sufficient to convey standing to seek that injunction (Dkt. 54, 63), White and Yellow chose not to plead new facts but to drop the injunction from its complaint. Under these circumstances, it seems safe to assume that White and Yellow could not further amend to cure this defect. But even if it could, amendment would be futile because its claims are also moot.

> **B.** **Because White and Yellow is out of business and pleads no facts showing that it is likely to reopen, its claims are moot.**

Mootness, like standing, rests on the Article III case-or-controversy limit to federal jurisdiction. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC) Inc.*, 528 U.S. 167, 189 (2000). The Supreme Court has, at times, described mootness as "standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (internal quotation marks omitted). But there are important differences between the two. Standing embodies not just jurisdictional but prudential concerns: it ensures "that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Laidlaw*, 528 U.S. at 191. Since mootness issues arise after the case has been filed—sometimes years later—when resources have already been devoted to the case, some of those prudential concerns drop away, leaving only the irreducible case-or-controversy requirement. *Ibid.* Thus, the party asserting mootness bears the burden of persuading the court that the case is no longer live. *Id.* at 189. And several exceptions may save an otherwise moot case, whereas standing admits of no such exceptions. *Id.* at 190-91.

Though a case might be moot with respect to injunctive relief, courts may sometimes still hear a claim for declaratory relief.  *Feldman v. Bomar*, 518 F.3d 637, 942 (9th Cir. 2008) (citing *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121-22 (1974)).  But even as to declaratory relief, the "basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."  *Feldman*, 518 F.3d at 942 (internal quotation marks omitted).  Any harm that might come to the plaintiff "must not be so remote and speculative that there [is] no tangible prejudice to the existing interests of the parties."  *Super Tire Eng'g*, 416 U.S. at 123.

Thus, where a plaintiff claims that its business has been harmed by government action and seeks equitable relief, but goes out of business after filing suit and disclaims any possibility of returning to that business, the case is generally moot.  *City News and Novelty*, 531 U.S. at 283; *see also*, *e.g.*, *Board of License Comm'rs of the Town of Tiverton v. Pastore*, 469 U.S. 238 (1985) (per curiam).  The case may still be live, however, if there is a reasonable possibility that the shuttered business will reverse its fortunes.  For example, in *Clark v. City of Lakewood*, a city in Washington passed an ordinance restricting nude dancing.  259 F.3d 996, 1002-03 (9th Cir. 2001).  Clark owned an adult business in the city, *id.* at 1003; the ordinance caused that business to go under, *id.* at 1008, and Clark lost his operating license after filing suit, *id*. at 1011.  He stated that, if the ordinance were found unconstitutional, it was his intent to reopen his business.  *Id.* at 1008.  The court thought it likely that he could do so, which was enough to save the case from both standing and mootness attacks.  *Id.* at 1011-12.

White and Yellow shut its doors in April 2016, and that is unlikely to change.  Here, the problem is not one of desire—White and Yellow would plainly like to reopen—but ability.  This situation is therefore less like *Clark* than like *Feldman v. Bomar*.  In *Feldman*, the National Parks Service had a policy to exterminate non-native feral pigs living on Santa Cruz Island.  *Feldman*, 518 F.3d at 640.  Several animal welfare groups challenged the policy under federal and state environmental laws.  *Ibid.*  They failed to secure a preliminary injunction, however, and while the case was pending, the government put the policy into action, killing all of the pigs on the island.  *Id.* at 641.  On appeal to the Ninth Circuit, the animal welfare groups asserted

that, though the pigs were dead, their cause lived on.  *Id.* at 643.  In particular, they claimed that some pigs might have escaped their hunters (although no one had seen any for over a year) or that someone might reintroduce pigs to the island at some point in the future.  *Ibid.*  Because the risk of future harm to future pigs was too speculative to credit, the court rejected those arguments, finding the case moot.  *Id.* at 643-44.

For over a year, White and Yellow has tried to restart its business, without luck.  *See* Plaintiff's Supplemental Brief on Injunctive Relief, Dkt. 55, at 3:23-26.  Unlike the adult business owner in *Clark*, White and Yellow has not asserted that the TNC regulations are the but-for reason it shut down, and that it would immediately reopen if it won this case.  Even if it would, before it could, White and Yellow must satisfy a $230,000 judgment lien.  (Dkt. 53.)  Thus, as in *Feldman*, the chain of events that would have to pass before the challenged government policy could ever again affect the plaintiff is simply so remote and speculative that there is no tangible prejudice to its *existing* interests.  *Feldman*, 518 F.3d at 643.  In other words, White and Yellow "no longer has a legally cognizable interest in the outcome" of this case, which is therefore moot.  *City News and Novelty*, 531 U.S. at 283.

Once again, even assuming that White and Yellow could plead facts showing that this case remains live, amendment would be futile.  Even if the Court could hear this case, White and Yellow has not pleaded, and cannot plead, facts showing that it could win on the merits.

### III.   Because the CPUC had at least one rational basis for distinguishing between TNCs and taxicabs, White and Yellow's equal protection and substantive due process claims fail.

#### A.   Federal courts across the country have recognized that the government may distinguish between TNCs and taxicabs without violating the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  The first step in the equal protection analysis is to identify the state's classification of groups, "which must be comprised of similarly situated persons so that the

factor motivating the alleged discrimination can be identified." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167-67 (9th Cir. 2005). For the sake of argument, we assume that TNCs and taxicabs are similarly situated, and therefore proceed to the second step in the analysis, which is to determine the applicable level of scrutiny. *See Country Classic Dairies, Inc. v. State of Montana, Dept. of Commerce Milk Bureau*, 847 F.2d 593, 596 (9th Cir. 1988).

Where no suspect or quasi-suspect class is involved and no fundamental right is burdened, courts review equal protection claims under the rational basis standard. *City of Cleburne*, 473 U.S. at 440. For equal protection purposes, the suspect and quasi-suspect classes comprise race, ancestry, alienage, and gender; and the fundamental rights include privacy, marriage, voting, travel, and freedom of association. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 177-78 (9th Cir. 2004). The TNC regulations touch none of those—they are pure economic regulations—so rational basis review applies.

On rational basis review, state action "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc'ns*, 508 U.S. at 313. "[I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *City of New Orleans v. Dukes*, 427 U.S. 297, 303-04 (1976). "[T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Beach Commc'ns*, 508 U.S. at 315 (internal quotation marks omitted).

Federal judges across the country, including this District's Judge Edward Chen, have held that the government has a rational basis for distinguishing between TNCs and taxicabs.[2] Here are some of the reasons.

---

[2] We know of nine cases so holding:
1) *Illinois Transp. Trade Ass'n v. City of Chicago*, 839 F.3d 594 (7th Cir. 2016), *cert. denied*, No. 16-1143 (U.S. Apr. 24, 2017);
2) *Desoto Cab Co., Inc. v. Picker*, __ F.Supp.3d __, 2017 WL 118810 (N.D. Cal. Jan. 12, 2017), *appeal docketed*, No. 17-15261 (9th Cir. Feb. 14, 2017);

...   All of the courts have recognized that the key difference between taxicabs and TNCs—that taxicabs may take street hails and TNCs may not—justifies different rules for the two.  Thus, for example, stricter rules for taxis promote consumer safety and confidence.  "Taxis but not [TNCs] are permitted to take on as passengers persons who hail them on the street.  Rarely will the passenger have a prior relationship with the driver, and often not with the taxicab company either . . . ." On the other hand, "customers, rather than being able to hail [a TNC], must sign up with [the TNC] before being able to summon it, and the sign up creates a contractual relationship specifying such terms as fares, driver qualifications, insurance, and any special need of the potential customer owing to his or her having a disability."  *Illinois Transp. Trade Ass'n*, 839 F.3d at 598.

...   Likewise, "in a street-hail situation, the passenger typically has an immediate need for transportation services and therefore, in a more vulnerable position, lacks the assurances that come with a pre-arranged ride."  *Desoto Cab. Co.*, __ F.Supp.3d at __, 2017 WL 118810, at *7.

...   And when summoning a TNC, the passenger "has the opportunity to shop for better fares but in the case of a street hail the passenger . . . has no opportunity to negotiate the fare."  *Boston Taxi Owners Ass'n*, __ F.Supp.3d at __, 2017 WL 354010, at *6; *see also Gebresalassie*, 170 F.Supp.3d at 62 (noting that "it is impractical to attempt to negotiate with several taxicabs while hailing one on the street").  And "[e]ven if a passenger and [taxicab] driver orally agreed on a fixed price before the ride began, there would be no record of that agreement . . ." unlike with TNCs, where the smartphone app creates an electronic record.  *Joe Sanfelippo Cabs*, 46 F.Supp.3d at 893.

---

3) *Miadeco Corp. v. Miami-Dade County*, __ F.Supp.3d __, 2017 WL 1319576 (S.D. Fla. Apr. 10, 2017), *appeal docketed*, No. 17-11995 (11th Cir. May 1, 2017);

4) *Melrose Credit Union v. City of New York*, __ F.Supp.3d __, 2017 WL 1200902 (S.D.N.Y. Mar. 30, 2017);

5) *VTS Transp., Inc. v. Palm Beach County*, __ F.Supp.3d __, 2017 WL 1042331 (S.D. Fla. Mar. 8, 2017);

6) *Boston Taxi Owners Ass'n v. Baker*, __ F.Supp.3d __, 2017 WL 354010 (D. Mass. Jan. 24, 2017), *appeal dismissed per stipulation*, No. 17-1202 (1st Cir. Mar. 27, 2017);

7) *Newark Cab Ass'n v. City of Newark*, __ F.Supp.3d __, 2017 WL 214075 (D.N.J. Jan. 18, 2017);

8) *Gebresalassie v. District of Columbia*, 170 F.Supp.3d 52 (D.D.C. 2016); and

9) *Joe Sanfelippo Cabs Inc. v. City of Milwaukee*, 46 F.Supp.3d 888 (E.D. Wis. 2014).

... Beyond prearrangement, there "are other differences, which many consumers consider advantages of [TNCs] over taxis: the storage of payment information, so that one does not need to be carrying cash or a credit card; [or] the ability to see a time estimate of how long a pickup will take and also a driver's rating by past users . . . ." Those differences, too, justify separate regulations. *Illinois Transp. Trade Ass'n*, 839 F.3d at 596.

... Separate regulations for TNCs and taxicabs further "the legitimate government purpose of crafting a framework to capture new technology." *VTS Transp.*, __ F.Supp.3d at __, 2017 WL 1042331, at *3.

... Finally, the government may promote competition by subjecting new market entrants to lighter regulation than incumbents. *See Illinois Transp. Trade Ass'n*, 839 F.3d at 599 ("Chicago . . . has chosen the side of deregulation, and thus of competition, over preserving the traditional taxicab monopolies. That is a legally permissible choice."); *see also VTS Transp.*, __ F.Supp.3d at __, 2017 WL 1042331, at *4 ("[F]acilitating competition is a legitimate government purpose").

All of those reasons apply here.

Because the CPUC had at least one rational basis for distinguishing between TNCs and taxicabs, White and Yellow's equal protection claim fails.

### B. The existence of a rational basis also destroys White and Yellow's substantive due process claim.

Substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (quoting U.S. Const., amdt. 14).

White and Yellow asserts that it has "a vested property right to offer taxicab service in the County of Orange pursuant to its [Orange County] permits, without competition from other taxicabs except those also licensed and regulated by [Orange County]." FAC, Dkt. 65, at 42:3-5.[3] But property "does not include a right to be free from competition. A license to operate a

---

[3] TNCs are not taxicabs but, given the gist of White and Yellow's complaint, this statement can be read broadly to include them.

1   coffee shop doesn't authorize the licensee to enjoin a tea shop from opening." *Illinois Transp.*

2   *Trade Ass'n*, 839 F.3d at 596.  So the right to operate taxicabs in Orange County "isn't a right to

3   exclude competitive providers of transportation." *Id.* at 597.[4]  Because White and Yellow has

4   not identified a cognizable property right that the TNC regulations abridge, the due process

5   analysis could end there.  But assuming, *arguendo,* that White and Yellow has stated such a

6   right, its claim fares no better in step two.

7   As with equal protection, the second step in a substantive due process analysis is to

8   identify the applicable level of scrutiny.  If the legislation "in question abridges a fundamental

9   right . . . [it] will be subject to strict scrutiny."  *United States v. Juvenile Male*, 670 F.3d 999,

10  1012 (9th Cir. 2012) (internal citation omitted).  If not, "government action need only have a

11  rational basis to be upheld against a substantive due process attack."  *Kim v. United States*, 121

12  F.3d 1269, 1273 (9th Cir. 1997).

13  The rights considered "fundamental" are "those activities that [the Supreme Court] has

14  identified" as being fundamental, *Glucksberg*, 521 U.S. at 727, and include the right to marry,

15  to have children, to direct the education and upbringing of one's children, to marital privacy, to

16  use contraception, to abortion, and to refuse medical treatment.  *Id.* at 720.  The TNC

17  regulations do not burden any of those enumerated rights.  They are, rather, economic

18  regulations, and "economic legislation . . . will not be struck down on substantive due process

19  grounds so long as it implements a rational means of achieving a legitimate governmental end."

20  *Indep. Training and Apprenticeship Program v. Cal. Dep't of Indus. Rel.*, 730 F.3d 1024, 1039

21  (9th Cir. 2013) (internal quotation marks omitted); *see also*, *e.g.*, *Williamson v. Lee Optical of*

22  *Oklahoma, Inc.*, 348 U.S. 483, 488-91 (1955) (applying rational basis test to economic

23

24  [4] *See also*, *e.g.*, *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527

25  U.S. 666, 676 (1999) ("[B]usiness in the sense of *the activity of doing business*, or *the activity of*
    *making a profit* is not property in the ordinary sense . . . ."); *Chapman v. Sheridan-Wyoming*

26  *Coal Co.*, 338 U.S. 621, 628 (1950) (rejecting a suit where the "whole claim of damage is that
    competition . . . will impair this snug little monopoly of the market to which plaintiff thinks it

27  has acquired a property right"); *Tennessee Elec. Power Co. v. TVA*, 306 U.S. 118, 139 (1939)

28  (holding that a local franchise confers "no property right to be free of competition"),
    *disapproved on other grounds in Bond v. U.S.*, 564 U.S. 211, 220 (2011).

regulations under both the Equal Protection and Due Process clauses).  Thus, the rational bases that thwart White and Yellow's equal protection challenge do the same for its due process claim.

### IV.   As the Court already ordered, the CPUC-as-entity must be dismissed from the case.

In its order granting in part the CPUC Defendants' motion to dismiss the original complaint, the Court recognized that the CPUC, as an entity, cannot be sued in federal court. Dkt. 63, at 10:19-20 ("The CPUC is considered an arm of the state.  Therefore it is immune from suit.").  Nevertheless, the FAC still names the CPUC as a defendant, along with the five Commissioners.  Even if this case were to go forward against the Commissioners, it may not go forward against the CPUC.

But it should not go forward at all.

### V.   Because amendment would be futile, White and Yellow's claims against the CPUC Defendants should be dismissed with prejudice.

While a court "should freely give leave" to amend "when justice so requires . . ." Fed. R. Civ. P. 15(a)(2), the court should dismiss with prejudice when "it is clear that the complaint could not be saved by any amendment." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016).  Amendment would be futile for two reasons.

First, given the posture of this case, it would be unreasonable to assume that White and Yellow could establish this Court's jurisdiction.  It has already had one round of supplemental briefing to explain how this case is justiciable and, when that proved insufficient, has already amended once.  The only new facts it pleaded did nothing to show that its case against the CPUC Defendants is live.  *See*, *e.g.*, FAC, Dkt. 65, at 34:18-24 (discussing Uber's "Greyball" software).  The Court may therefore presume that White and Yellow has taken its best shot.

Second, even if it could establish this Court's jurisdiction, White and Yellow cannot prevail on the merits.  There are no facts it could plead that would shift the equal protection and due process standards from rational basis to some form of higher scrutiny.  And, without that, the weight of authority against it is simply too great to overcome.

The claims against the CPUC Defendants should be dismissed with prejudice.

**Conclusion**

Because White and Yellow lacks standing, and because this case is moot, the Court lacks subject matter jurisdiction over White and Yellow's equal protection and substantive due process claims against the CPUC Defendants.  Even if the Court could hear those claims, the CPUC Defendants had a rational basis for their actions, so White and Yellow would lose on the merits.  Because amendment would be futile, the Court should dismiss White and Yellow's claims against the CPUC Defendants with prejudice.


Dated:  May 24, 2017                    Respectfully submitted,

                                        /s/    JONATHAN C. KOLTZ
                              By:       _____
                                        JONATHAN C. KOLTZ

                                        Attorney for the California Public
                                        Utilities Commission Defendants

1

## CERTIFICATE OF SERVICE

I certify that I electronically filed the **CPUC DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** with the Clerk of Court for the United States District Court for the Northern District of California by using the CM/ECF system on May 24, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s     JONATHAN C. KOLTZ
_____
       JONATHAN C. KOLTZ