**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A WHITE AND YELLOW CAB, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 15-cv-05163-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS UCL AND UPA CLAIMS; GRANTING PLAINTIFF FINAL OPPORTUNITY TO AMEND**<br><br>Re: Dkt. Nos. 70, 102 |

This matter comes before the Court upon consideration of the parties' supplemental briefing on the motion to dismiss the First Amended Complaint ("FAC"), filed by Uber Technologies, Inc. ("Uber"), Rasier, LLC ("Rasier"), and Rasier-CA, LLC ("Rasier-CA") (collectively the "Uber Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it GRANTS, IN PART, AND DENIES, IN PART, the motion to dismiss. The Court will grant Plaintiff, A White and Yellow Cab, Inc. ("Plaintiff") one final opportunity to amend its claims on the terms set forth in this Order.

**BACKGROUND**

The facts underlying this dispute are set forth in the Court's prior orders resolving motions to dismiss filed by the Uber Defendants and by the California Public Utilities Commission ("CPUC") and its Commissioners. *See A White and Yellow Cab Co. v. Uber Technologies, Inc.*, No. 15-cv-5163-JSW, 2017 WL 4642346 (N.D. Cal. Oct. 17, 2017) ("*AWYC III*"); *A White and Yellow Cab Co. v. Uber Technologies, Inc.*, No. 15-cv-5163-JSW, 2017 WL 1208384 (N.D. Cal. Mar. 31, 2017) ("*AWYC II*"); Dkt. No 63, Order Granting CPUC Defendants' Motion to Dismiss

1  ("*AWYC I*").[1]  The Court shall not repeat those facts except as necessary.  In brief, Plaintiff

2  alleges, without distinguishing between them, that the Uber Defendants operate *de facto* taxis and

3  unfairly compete with authentic taxi companies like Plaintiff.[2]  (FAC ¶¶ 3, 14, 38-40, 44, 56-60.)

4  Based on those and other allegations, Plaintiff asserts claims for violations: (1) of the unfair and

5  unlawful prongs of California's Unfair Competition Law ("UCL"), Business and Professions Code

6  sections 17200, *et seq.*; (2) California's Unfair Practices Act ("UPA"), Business and Professions

7  Code sections 17000, *et seq.*; and (3) the Lanham Act, 15 U.S.C. section 1125(a).[3]

8  On October 17, 2017, the Court granted, in part, the Uber Defendants' motion to dismiss to

9  the extent Plaintiff's claims under the UCL and the UPA were based on the *de facto* taxi

10  allegations.  *AWYC III*, 2017 WL 4642346, at *3-4.  Because it was not clear whether there were

11  any other allegations that would support a claim under the UCL and the UPA, the Court gave the

12  parties the opportunity to meet and confer and to submit supplemental briefs on the motion.  The

13  parties could not agree, and the parties have filed their supplemental briefs on that issue.  The

14  Court also considers the Uber Defendants' alternative arguments in support of the motion to

15  dismiss the UCL and the UPA claims.  *Id.*, 2017 WL 4642346, at *4-5.

## ANALYSIS

17  The Court previously stated that "a common theme of Plaintiff's claims is that the Uber

18  Defendants unfairly compete with Plaintiff and engaged in unlawful conduct, *because* they do not

19  comply with regulations applicable to authentic taxi companies, which in Plaintiff's view are more

20  stringent than the regulations applied to" transportation network companies ("TNCs").  *AWYC III,*

21  2017 WL 4642346, at *3 (emphasis added); *see also AWYC II*, 2017 WL 1208384, at *6.  The

---

[1]  Plaintiff has dismissed the CPUC Defendants.  (Dkt. No. 77.)

[2]  Plaintiff defined as "de facto taxis" as follows: "privately-owned private passenger vehicles that generally are not capable of legally holding more than eight passengers plus a driver[.]"  (FAC ¶ 38.)

[3]  The Uber Defendants have not moved to dismiss the Lanham Act claim.  In its opposition to the Uber Defendants' motion to dismiss the FAC, Plaintiff asserted it was not pursuing a claim based on alleged violations of the fraudulent prong of the UCL and was not pursuing a claim for locality discrimination under the UPA.  (Dkt. No. 79, Opp. Br. at iii:8-9, 12 n.9.)

1  Court concluded that any such claims would be barred by Public Utilities Code section 1759(a),
2  which provides that "[n]o court of this state, except the Supreme Court and the court of appeal, to
3  the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any
4  order of decision of the commission or to suspend or delay the execution or operation thereof, or
5  to enjoin, restrain, or interfere with the commission in the performance of its official duties, as
6  provided by law and the rules of court."

7  In order to determine whether Section 1759(a) barred Plaintiff's claims, the Court
8  considered: "(1) whether the PUC had the authority to adopt a regulatory policy on the subject
9  matter of the litigation; (2) whether the PUC had exercised that authority; and (3) whether action
10 in the case before the court would hinder or interfere with the PUC's exercise of regulatory
11 authority." *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011) (citing *San Diego Gas
12 & Electric Co. v. Superior Court (Covalt)*, 13 Cal. 4th 893, 923-935 (1996)). The Court found the
13 first two prongs of the *Covalt* test were satisfied, because the CPUC had authority to and had
14 asserted jurisdiction over companies like the Uber Defendants. It also found that a ruling in
15 Plaintiff's favor on the "*de facto* taxi allegations" would interfere with ongoing CPUC
16 proceedings. *AWYC III*, 2017 WL 4642346 at *4; *AWYC II*, 2017 WL 1208384, at *7.[4]

17 Plaintiff argues that the allegations in the FAC still support a claim under the unlawful and
18 unfair prongs of the UCL and under the UPA, because the Uber Defendants' business model
19 permits them to unfairly compete with taxi companies and because the Uber Defendants created
20 that business model with the intent to drive such companies out of business. To date, the Court
21 and the parties have referred to the Uber Defendants collectively in briefs and in orders. Plaintiff
22 does not allege that any Uber Defendant is the agent or alter-ego of another defendant. In the

---

[4] To further clarify the Court's "*de facto* taxi allegations" ruling, that ruling applies to any allegations based on conduct that occurred prior to December 2012. *See, e.g., Goncharov v. Uber Technologies, Inc.*, -- Cal. Rptr. 3d --, 2018 WL 580714, at *9 (Cal. App. Jan. 29, 2018). The Court's ruling also was premised on the assumption that all three Uber Defendants are part of the CPUC's rulemaking proceedings on TNCs. It still is not clear to the Court whether Rasier, LLC is subject to those proceedings. (*See, e.g.,* Dkt. No. 103, Def. Supp. Br. at 7:4-8.) If it is not, the Court would entertain a motion to reconsider its ruling regarding Section 1759 as to Raiser, LLC, but if, and only if, Plaintiff can, in good faith and in compliance with its obligations under Rule 11 allege that Rasier, LLC engaged in conduct that violated the UCL or the UPA.

3

absence of such allegations, the Court will address where it finds Plaintiff's allegations insufficient because it has grouped the Uber Defendants together.

**A.     The UCL Claim.**

The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).

**1.     Plaintiff Fails to State A Claim Under the Unlawful Prong.**

The UCL's unlawful prong proscribes "anything that can be properly called a business practice and that at the same time is forbidden by law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (quoting *Rubin v. Green*, 4 Cal. 4th 1187, 1200 (1993)). "[A] violation of another law is a predicate for stating a cause of action" under the unlawful prong. *Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App 4th 1544, 1554 (2007).

The fact that the CPUC has instituted rulemaking proceedings with regard to TNCs does not mean that any and all claims are by Section 1759(a). *See, e.g., Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224 (1993). In *Cellular Plus,* the plaintiffs were a group of individual consumers as well as corporate sales agents who alleged the defendants, the only two licensed providers of cellular telephone service in the San Diego area, engaged in price fixing in violation of California's Cartwright Act. The trial court sustained the defendants' demurrers, finding that the CPUC's jurisdiction over the defendants' rates precluded a violation of the Cartwright Act. *Id.* at 1231. The court of appeal reversed, reasoning that "[p]rice fixing between competitors is illegal per se under the Cartwright Act. There are no exceptions from this per se rule for price fixing agreements between two utilities … whose rates are subject to approval by the PUC[.]" *Id.* at 1244.

The court also rejected the defendants' arguments that Section 1759(a) posed a bar to the claims, finding that a ruling in the plaintiffs' favor would not contravene an existing CPUC order or decision. "Under the Cartwright Act, a court does not look at the economic reasonableness of

4

the prices. Rather, a court looks at whether the prices were in fact artificially maintained at a uniform level, whether 'reasonable' or not." *Id.* at 1245-46. The court also found a ruling would not interfere with the CPUC's overall jurisdiction to address rates charged by public utilities, in part because the plaintiffs were not asking for relief that would require the CPUC to change the rates it had approved. *Id.* at 1246; *see also id.* at 1247-49 (explaining why claims based on antitrust violation would not interfere with CPUC proceedings and noting that "[c]laims under the Cartwright Act are clearly within the province of the courts, not the PUC").

In addition to the "*de facto* taxi allegations," which the Court has dismissed with prejudice, Plaintiff alleges the Uber Defendants violated the UPA. The Court addresses the UPA claim in Section B, and it finds that Plaintiff still has not stated a claim. If, however, Plaintiff can state a claim under the UPA it also would be able to state a claim under the unlawful prong of the UCL.

Plaintiff also alleges the "acts and omissions as alleged herein also violated other laws (including without limitation laws requiring compliance with ADA Rules and Regulations and insurance regulations for commercial automobile coverage…)." (FAC ¶ 60.d.; *see also id.* ¶¶ 39-40, 42, 44, 52, 60.b, 61.) For example, Plaintiff alleges that "even under its newer regulations the CPUC allows Uber to satisfy its insurance requirements by reference to a driver's personal insurance if Uber is satisfied that it will cover de facto taxi operations." (FAC ¶ 42 (emphasis omitted).) To the extent Plaintiff challenges the sufficiency of the insurance carried by the Uber Defendants and does not argue that an Uber Defendant failed to comply with a requirement adopted by the CPUC, the Court finds those allegations are not comparable to the allegations of price fixing at issue in *Cellular Plus*. Rather, the Court finds them analogous to allegations in *Hartwell Corp. v. Superior Court*, 27 Cal. 4th 256 (2002).

In *Hartwell*, a group of plaintiffs asserted claims challenging both the adequacy of drinking water standards and compliance with standards set by the CPUC. *Id.* at 260-62. The Supreme Court found that plaintiffs' challenge to the adequacy of the drinking water standards would be barred by Section 1759(a). "An award of damages on the theory that the public utilities provided unhealthy water, even if the water met" standards adopted by the CPUC "would plainly undermine the commission's policy by holding the utility liable for not doing what the

5

1  commission has repeatedly determined that it and all similarly situated utilities were not required
2  to do." *Id.* at 276 (quoting *Covalt*, 13 Cal. 4th at 950). Here, as in *Hartwell*, if the Court found
3  that the insurance carried by an Uber Defendant, or its drivers, was insufficient, even if the
4  insurance met standards adopted by the CPUC, that ruling could interfere with or hinder the
5  ongoing rulemaking proceedings. *Id.*[5] On this record, the Court cannot say the same is true for
6  alleged violations of the ADA, but Plaintiff has not adequately alleged facts to show how a
7  particular Uber Defendant violated the ADA.[6]

8  Accordingly, the Court grants the Uber Defendants' motion to dismiss on this basis.

### 2.  Plaintiff Fails to State A Claim Under the Unfair Prong.

The UCL proscribes business practices that are "unfair," but it does not define that term. In claims between direct competitors "the word 'unfair' … means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. Many of the allegations that address why the Uber Defendants' conduct is "unfair" suggest Plaintiff contends the Uber Defendants are able to compete unfairly with Plaintiff *simply* because they are subject to different regulations than Plaintiff is, a theory Plaintiff also espouses in its supplemental brief. (*See, e.g.*, FAC ¶¶ 60(a)-(c); Dkt. No. 102, Pl. Supp. Br. at 3:16-18.) The Court concludes a UCL claim premised on those allegations would be barred by Section 1759(a). A finding in Plaintiff's favor could hinder or interfere with the ongoing CPUC proceedings by declaring unfair something the CPUC has declared, or will declare, is permissible under the regulations it is developing for TNCs.

In *Cel-Tech,* the California Supreme Court found that a plaintiff could state a claim under

---

[5]  Plaintiff also appears to use the allegations regarding insurance to provide background as to why the Uber Defendants' conduct is misleading for purposes of the Lanham Act claim. (*See, e.g.*, FAC ¶ 46.) Therefore, the allegations regarding insurance need not be omitted entirely from an amended complaint.

[6]  There may be other hurdles to a UCL claim based on alleged violations of that statute, such as how an Uber Defendant's alleged violation of the ADA caused Plaintiff harm. However, those issues are not before the Court.

6

1  the unfair prong of the UCL based on conduct that allegedly violated Section 17043, even if a

2  plaintiff was unable to allege facts showing the defendant acted with the purpose of injuring

3  competitors or destroying competition. 20 Cal. 4th at 188. Based on the existing allegations, and

4  for the reasons set forth in Section B, the Court concludes Plaintiff has not alleged sufficient facts

5  to state essential elements of claim for below cost pricing or for using loss leaders against any

6  Uber Defendant. In addition, with the exception of the allegations regarding the alleged violations

7  of the UPA, there are insufficient allegations in the FAC to draw a reasonable inference that any

8  Uber Defendant's conduct falls within the definition of unfair as used in *Cel-Tech*.

9  Accordingly, the Court grants the Uber Defendants' motion to dismiss on this basis as

10  well.

### 3. Plaintiff Fails to Allege Facts that Show It Seeks Restitution.

The Uber Defendants argue that even if Plaintiff alleges facts that would be sufficient to state a claim under the UCL, the facts are not sufficient to show it seeks restitution, rather than damages or non-restitutionary disgorgement. A plaintiff's remedies under the UCL are limited to injunctive relief and restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). The *Korea Supply* court also held that a plaintiff may seek disgorgement of a defendant's profits, but only to the extent those profits constitute restitution. *Id.* at 1145, 1148. "[N]on-restitutionary disgorgement of profits is not an available remedy in an individual action under the UCL." *Id.* at 1152.

In *Korea Supply*, the plaintiff alleged the defendant violated the UCL by using bribes and other favors to cause a company that the plaintiff represented to lose a contract with the Republic of Korea. When the Republic of Korea awarded the contract to the defendant, the plaintiff lost a commission it would have earned if the Republic of Korea had awarded the contract to the plaintiff's client. *Id.* at 1140. The plaintiff then sought to obtain the profits the defendant gained from the contract with the Republic of Korea. The California Supreme Court concluded the plaintiff could not state a claim under the UCL and, in doing so, explained the meaning of the terms "restitution" and "disgorgement." *Id.*

An order for "restitution" is an order that compels a "defendant to return money obtained

through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an *ownership interest in the property* or those claiming through that person." *Id.* at 1144-45 (emphasis added, *quoting Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 126-27 (2000)); *see also Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000) (goal of restitution is to restore plaintiff to status quo ante). In contrast, "disgorgement" is a broader remedy. "Disgorgement 'may include a restitutionary element, but it is not so limited.'" *Korea Supply*, 29 Cal. 4th at 1145 (quoting *Kraus*, 23 Cal. 4th at 127). An order for disgorgement may compel a defendant (1) "to surrender all money obtained through an unfair business practice even though not all is to be restored to the person from whom it was obtained or those claiming under those persons," or (2) "to surrender ... all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice." *Id.* at 1145 (quoting *Kraus*, 23 Cal. 4th at 127).

The *Korea Supply* court then clarified that "an individual may recover profits unfairly obtained to the extent that those profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id.* at 1148; *see also Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 699 (2006) (a plaintiff can seek money or property as restitution where such "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession") (quoting *Great-West Life and Annuity Ins. v. Knudson*, 534 U.S. 204, 213 (2002)). Applying those principles to the facts before it, the *Korea Supply* court noted that "it [was] clear that plaintiff [was] not seeking the return of money or property that was once in its possession. [The plaintiff had] not given any money to [the defendant]; instead it was from the Republic of Korea that [the defendant] received its profits." 29 Cal. 4th at 1149. In light of these facts, the court found that "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff." *Id.* Therefore, because the plaintiff's requested remedy was non-restitutionary, it was not entitled to disgorgement of the defendant's profits under the UCL. *Id.* at 1140, 1149.

8

Plaintiff alleges that its income is derived from the lease payments it receives from drivers on a weekly basis, rather than from the fares those drivers earned per ride. (FAC ¶ 53.) Plaintiff also alleges that it was one of three companies awarded a franchise to operate in Anaheim, California and alleges that it had exclusive contracts to pick up fares at the Santa Ana Depot and certain hotels and restaurants in Orange County. (*Id.* ¶¶ 23-24, 30 56.) Plaintiff does not allege that the Santa Ana Depot or any venue with which it had an exclusive contract terminated a contract with Plaintiff because of an Uber Defendant's conduct. Similarly, Plaintiff does not allege that the City of Anaheim terminated Plaintiff's franchise because of an Uber Defendant's conduct. Nor does Plaintiff allege that an Uber Defendant's allegedly unlawful and unfair conduct enabled it to obtain those exclusive contracts or the Anaheim franchise in lieu of Plaintiff.[7] Rather, Plaintiff alleges that by operating in what previously was an exclusive venue for the Plaintiff, the Uber Defendants impacted Plaintiff's drivers' ability to obtain guaranteed passengers. According to Plaintiff, "it became more and more difficult for [Plaintiff's drivers] to earn a living while competing with Uber. Many of [Plaintiff's] drivers 'quit' and started driving *de facto* taxicabs for Uber since it was easier for them to do so and they were not subject to the same restrictions and qualifications as were those driving authentic taxicabs[.]" (*Id.* ¶ 57.)

Plaintiff alleges that it had a specific number of taxis operating in its fleet, and it alleges the amount it charged per lease for cabs. Plaintiff posits, but does not clearly allege, that every driver it lost was lost to an Uber Defendant and asks for restitution in the amount of "up to $181,115 per week from 2013 through the present." (FAC ¶ 64.) According to Plaintiff, that figure represents the lease payments it lost because of the Uber Defendants' conduct. Like the plaintiff in the *Korea Supply* case, Plaintiff did not give any money to an Uber Defendant, and an award of restitution would "not replace any money or property that" an Uber Defendant "took directly from" Plaintiff. *Korea Supply*, 29 Cal. 4th at 1194.

"[R]estitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Id.* at 1149. Plaintiff alleges it has "been deprived of its vested

---

[7] Further, Plaintiff alleges that when it went out of business it surrendered its Anaheim franchise rights to other taxi companies. (FAC ¶ 24.)

9

1  earnings and its vested rights to earn income pursuant to its exclusivity agreements," which are
2  derived from the lease payments it obtains from drivers. (FAC ¶¶ 53, 62.) A "vested interest is
3  one that is unconditional, absolute, and not contingent." *Pegasus Satellite Television, Inc. v.*
4  *DirectTV, Inc.*, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004) (internal quotations and citations
5  omitted); *see also Black's Law Dictionary* at 1794 (10th ed. 2014). For example, the California
6  Supreme Court has held that "earned wages that are due and payable [under] the Labor Code are
7  as much the property of the employee who has given his or her labor to the employer in exchange
8  for that property as is property a person surrenders through an unfair business practice." *Cortez*,
9  23 Cal. 4th at 178. Thus, an employee has a vested interest in those wages and can recover the
10 wages as restitution. In contrast, the plaintiff's anticipated commission at issue in the *Korea*
11 *Supply* case was merely a contingent or "expectancy" interest. *Id.* at 1149-50; *see also L.A. Taxi*
12 *Cooperative, Inc. v. Uber Technologies, Inc.*, 114 F. Supp. 3d 852, 867 (N.D. Cal. 2015) (finding
13 plaintiff failed to allege facts to show it was seeking restitution where it did "not allege an
14 ownership interest in any of those profits or a 'confirmed' contractual relationship with any of
15 Uber's customers"); *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 542 (N.D. Cal. 1994)
16 ("[c]ompensation for a lost business opportunity is a measure of damages and not restitution to the
17 alleged victims").
18      Although Plaintiff alleges its interest in earnings from lease payments was "vested," that is
19 a legal conclusion couched as fact. Plaintiff does not include facts about its leases from which the
20 Court could reasonably infer its interest in those payments were vested, rather than contingent and
21 does not allege facts draw an inference that funds in an Uber Defendant's possession could be
22 traceable to those leases. The Court concludes Plaintiff has failed to plead facts showing that it
23 seeks restitution, rather than non-restitutionary disgorgement.[8]
24      Accordingly, the Court grants the Uber Defendants' motion to dismiss on this basis as
25 well.

---

[8] To the extent this Court found otherwise in *Luxpro Corp., v. Apple, Inc.*, it declines to follow that reasoning here. No. 10-cv-3058-JSW, 2011 WL 3566616, at *8 (N.D. Cal. Aug. 12, 2011).

### 4. The Court Grants Plaintiff One Final Opportunity to Amend.

Plaintiff argues that its theory of liability as to the Uber Defendants was not that the Uber Defendants should be regulated as a regular taxicab company would be regulated, but instead, that "Plaintiff could never compete on a level playing field with [the Uber Defendants], since Plaintiff had to comply with the heavy web of all of the regulatory requirements of taxis." (Pl. Supp. Br. at 3:15-18 (emphasis omitted).) Plaintiff may be able to allege facts that would show its interest in lease payments from its drivers was vested and could be traced to funds in an Uber Defendant's possession. The Court also cannot say that every aspect of Plaintiff's UCL claim would be barred by Section 1759(a). Accordingly, the Court grants Plaintiff one final opportunity to amend the UCL claim on the terms set forth at the end of this Order.[9]

**B.    The UPA Claim.**

Plaintiff alleges the Uber Defendants violated Business and Professions Code section 17043, which provides "[i]t is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition." Plaintiff also alleges that the Uber Defendants violated Section 17044, which makes unlawful "to sell or use any article or product as a "loss leader" as defined in Section 17030 of this chapter." (*See* FAC ¶ 72.) The term "loss leader" means "any article or product sold at less than cost," when certain other conditions are met. Cal. Bus. & Prof. Code § 17030.

**1.    Section 17024(1) Applies to Rasier-CA, LLC.**

The Uber Defendants argue that the UPA claim is preempted by Business and Professions Code section 17024(1), which provides that "[n]othing in this chapter applies: (1) To any service, article or product for which rates are established under the jurisdiction of the Public Utilities Commission of this State and sold or furnished by any public utility corporation, or installation

---

[9] Plaintiff has proposed a number of ways in which the FAC could be amended. The fact that Plaintiff labelled the Uber Defendants' vehicles as "de facto taxis" is not why the Court determined claims based on those allegations should be dismissed. Rather, the Court's decision was based on the conduct at issue.

11

1  and repair services rendered in connection with any services, articles or products." The Uber
2  Defendants argue that because Plaintiff alleges the CPUC has asserted jurisdiction over TNCs,
3  Plaintiff cannot allege facts to overcome the exemption.
4        The plain language of Section 17024(1) states that it applies to "any public utility
5  corporation." "Private corporations ... that own, operate, control, or manage a line, plant, or
6  system for the transportation of people or property, ... are public utilities subject to control by the
7  Legislature." Cal. Const. Art. XII, § 3; *see also Hladek v. City of Merced*, 69 Cal. App. 3d 585,
8  590 (1977). The CPUC "may fix rates for all public utilities subject to its jurisdiction[.]" *Id.*, Art.
9  XII, § 6; *see also id.*, Art. XII, § 4 (CPUC "may fix rates and establish rules for the transportation
10 of passengers"). As set forth in the Court's prior orders, the CPUC has exercised jurisdiction over
11 TNCs and the rule making proceedings regarding TNCs are ongoing. The CPUC has determined
12 that Rasier-CA qualifies as a TNC. Thus, it appears from the face of the FAC, and the record in
13 this case, that the statutory exemption applies to Rasier-CA. The Court concludes that Plaintiff's
14 UPA claim against Rasier-CA fails. Although the CPUC has exercised jurisdiction over TNCs, it
15 has not finally determined that Uber or Rasier are TNCs. The Court cannot determine as a matter
16 of law that Uber or Rasier, LLC would be subject to the exemption set forth in Section 17024(1).
17       Accordingly, the Court grants, in part, and denies, in part, the Uber Defendants' motion to
18 dismiss on this basis.
19       **2.**       **Plaintiff's Allegations Are Not Sufficient to State a Claim.**
20       The Uber Defendants also argue that Plaintiff fails to allege facts sufficient to state a claim
21 for a violation of the UPA. Having found that Raiser-CA would fall within the exemption, the
22 Court's analysis is limited to Uber and to Rasier. The purpose of the UPA is "to encourage
23 competition and safeguard the public against monopolies." *G.H.I.I. v. MTS, Inc.*, 147 Cal. App.
24 3d 256, 270 (1983); *see also* Cal. Bus. & Prof. Code §§ 17001, 17002. The essential elements of a
25 claim for below cost pricing are: (1) the sale of a product or article; (2) at less than the seller's
26 cost; and (3) for the purpose of injuring competitors or eliminating completion. *G.H.I.I.*, 147 Cal.
27 App. 3d at 275; *see also Dooley v. Crab Boat Owner's Ass'n*, 271 F. Supp. 2d 1207, 1215 (N.D.
28 Cal. 2003). "Cost" for purposes of Section 17043, includes both fixed and variable costs.

*Turnbull & Turnbull v. ARA Transportation, Inc.,* 219 Cal. App. 3d 811, 819-20 (1990) (citing Cal. Bus. & Prof. Code §§ 17026, 17029); *see also G.H.I.I.*, 147 Cal. App. 3d at 275 ("California employs a fully allocated cost standard to determine whether a sale has violated section 17043."). To allege the requisite mental state, a plaintiff must allege facts showing a defendant acted "with the purpose, i.e., the desire, of injuring competitors or destroying competition." *Cel-Tech*, 20 Cal. 4th at 174-75.

In *G.H.I.I.*, the court held that "to satisfy the pleading requirements of section 17043, the plaintiff must allege the defendant's sale price, its cost in the product market and its cost of doing business. … And the various costs must be stated in other than conclusionary terms." *Id.*; *accord Independent Journal Newspapers v. United Western Newspapers, Inc.*, 15 Cal. App. 3d 583, 587 (1971). District courts within the Ninth Circuit have followed *G.H.I.I.* and have dismissed cases where a plaintiff fails to adequately allege those facts. *See, e.g., Eastman v. Quest Diagnostics, Inc.*, 108 F. Supp. 3d 827, 838 (N.D. Cal. 2015); *Code Rebel, LLC v. Aqua Connect, Inc.*, No. 13-cv-4539 RSWL (MANx), 2014 U.S. Dist. Lexis 2824, at *18-*19 (C.D. Cal. Jan, 3, 2014).[10]

In the *Independent Journal* case, court found the plaintiff's allegations were not sufficient to state a claim but acknowledged that "[w]ithout discovery … plaintiff could not be expected to know exactly what was defendants' cost of advertising space sold in defendants' weekly newspapers[.]" 15 Cal. App. 3d at 587. However, the court concluded that "through its own cost experience [the plaintiff] could have alleged on information and belief a supposed cost figure for such space in defendant's weekly newspaper[.]" *Id.* Because plaintiff did not, the court found it failed to allege facts to state a claim. *Id.*

In the *G.H.I.I.* case, the plaintiffs alleged the price at which defendants sold their products and were able to allege invoice costs, but they did not include facts relating to the "definite cost of doing business." *G.H.I.I.*, 147 Cal. App. 3d at 275. Instead, they alleged "on information and

---

[10] This case is in federal court and, therefore, federal pleading standards apply. The "cost" of a product is an element of a claim under Section 17043, and the UPA has specific definitions of "cost." *See G.H.I.I.*, 147 Cal. App. 3d at 275; Cal. Bus. & Prof. Code §§ 17026, 17029. A court need not accept legal conclusions couched as fact. Therefore, an allegation that a defendant "sold a product at less than cost," without more, would be insufficient to state a claim under Rule 8 *and* under the standards set forth in the *G.H.I.I.* case.

13

1   belief, based on [their] experience, that the prices charged for records and tapes were 'below' [the
2   defendants'] stated invoice costs plus the unstated cost of doing business." *Id.* The court found
3   that "under the present circumstances [plaintiffs] are in a demonstrably poorer position than were
4   the plaintiffs in *Independent Journal*," although it did not clearly articulate why that was the case.
5   It then found that it would "serve no useful purpose to require a speculative allegation of cost
6   which adds nothing to the notice given by the pleadings in their present state." *Id.* at 276; *but see*
7   *Code Rebel*, 2014 U.S. Dist. Lexis 2824, at *18-19 (allegations made on information and belief
8   that offering to sell product at "$100 per connection for 20 connections was 'below average
9   variable cost' and below Defendant's 'cost of doing business'" insufficient to state claim).

10   In *Medina v. Microsoft Corp.*, the court also found the plaintiff had not sufficiently alleged
11   facts regarding the defendant's sale price or its costs in the product and costs of doing business.
12   No. 14-cv-00143-RS, 2014 WL 4243992, at *5 (N.D. Cal. Aug. 26, 2014). The plaintiff made the
13   exact product manufactured by the defendant, and the court concluded that the plaintiff "should
14   have ready access to the information necessary to meet Section 17043's pleading requirements,
15   making the lack of discovery at this phase of litigation irrelevant." *Id.* The court reasoned that the
16   plaintiff "ought to be capable of relying on his own company's cost experiences to make
17   reasonable allegations on information and belief regarding the [defendant's] sales price, product
18   cost, and cost of doing business." *Id.*

19   The Court previously granted the Uber Defendants' motion to dismiss the UPA claim,
20   because it found "Plaintiff has not alleged any facts regarding the Uber Defendants' prices, the
21   costs of their product, or their costs of doing business." *AWYC III*, 2017 WL 1208384, at *11
22   (emphasis in original). Plaintiff now includes some allegations regarding the prices the Uber
23   Defendant charge for ride service, although it does not allege which of the three defendants
24   charges those prices. Plaintiff also includes some allegations regarding the costs it believes the
25   Uber Defendants incur, although it does not distinguish among the Defendants. (FAC ¶¶ 67, 69.)
26   Plaintiff does allege the Uber Defendants keep their operating costs secret. There also appear to
27   be some differences between Plaintiff's business and the Uber Defendants' businesses, which
28   might allow for some leniency on pleading facts relating to a given Uber Defendant's cost of

14

1  doing business. However, because Plaintiff does not clearly distinguish among the Uber
2  Defendants, the Court concludes the allegations still are insufficient to show that Uber or Rasier
3  sold a product or service below its costs. For the same reason, the Court finds the allegations
4  would be insufficient to state a claim based on the use of loss-leaders. *See Independent Journal*,
5  15 Cal. App. 3d at 587.

Accordingly, the Court grants the motion to dismiss the UPA claim. Because the Court cannot say it would be futile, it will grant Plaintiff one final opportunity to amend this claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, the Uber Defendants' motion to dismiss the UCL and the UPA claims, and it GRANTS Plaintiff one final opportunity to amend. The Court will not require Plaintiff to file a motion to amend the UCL or the UPA claims. However, if Plaintiff wishes to assert additional claims against any of the Uber Defendants, as it suggests it might want to do in the supplemental brief, it must file a motion for leave to amend and attach a redline version of the proposed amended complaint that includes any new claims.

If Plaintiff chooses to file an amended complaint, Plaintiff shall not group the three Defendants together as it has done thus far in the litigation. As to the UCL claim, Plaintiff must identify the specific laws that it borrows to state its claim under the unlawful prong and must allege facts as to an individual Uber Defendant's conduct that allegedly violated those laws and facts as to an individual Uber Defendant's conduct that allegedly "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. To assist the Court in evaluating each prong of this claim, the Court suggests, but does not require, that Plaintiff to separate its allegations relating to the unlawful and the unfair prong.[11] Plaintiff must do the same with respect to allegations against

---

[11] The FAC also includes allegations that appear to be irrelevant to Plaintiff's claims. For example, Plaintiff alleges it lost the privilege of picking up fares at John Wayne Airport to another taxi company and was unsuccessful in its efforts to regain that privilege. Plaintiff also suggests it lost this privilege well before the Uber Defendants began operations. (*See* FAC ¶¶ 31-32.) It is

Uber and Rasier on its UPA claim.  Finally, because the Court is granting Plaintiff leave to amend, if Plaintiff chooses to do so, Plaintiff shall clearly allege facts showing how each individual Uber Defendant's conduct allegedly violated the Lanham Act.

Accordingly, Plaintiff shall either file an amended complaint that amends the existing claims or shall file a motion for leave to amend, with its proposed amended complaint, by no later than April 6, 2018.  If Plaintiff simply files an amended complaint, the Uber Defendants shall answer or otherwise respond within the time permitted under the Federal Rules of Civil Procedure. If Plaintiff moves for leave to amend additional claims, it shall notice its motion on an open and available date for terminal digits 0, 1 and 2.

**IT IS SO ORDERED.**

Dated: March 5, 2018

_____
JEFFREY S. WHITE
United States District Judge

---

not clear to the Court how those allegations explain how or why an Uber Defendant harmed Plaintiff.  The same is true with respect to Plaintiff's inability to obtain additional franchise stickers from the City of Anaheim.  (FAC ¶ 35.)  While the Court will not require Plaintiff to omit these allegations from an amended complaint, the Court urges Plaintiff to consider which allegations constitute relevant background information and which allegations truly are material to its claims and which allegations are not.

16